## HALLMAN ET AL. *v.* GROSS ET AL.

[No. 147, October Term, 1947.]

*Decided May 21, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Albert F. Wheltle,* with whom was *Joseph O. Kaiser* on the brief, for the appellants.

*R. Samuel Jett,* with whom was *W. Hamilton White-ford* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

The defendants in this case (appellants) appeal from from two orders passed by the chancellor, one dated October 1, 1947, and one the 24th day of October, 1947, which required the defendants to produce certain documents alleged and thought to be in the possession of the defendants, to be used by the plaintiffs in the examination of the defendants, under Discovery Rule 4 of General Rules of Practice and Procedure, 1947 Supplement Annotated Code, page 2038.

The bill of complaint, in substance, charges: That in 1944 Stephen Frank Gross and Henry T. Dietz, plaintiffs below (appellees) together with Harold E. Hallman and Walter A. Geiger, were employed by the Allied Paper Bag Corporation. The defendants were officers and directors of the corporation. Hallman and his wife owned 55 shares of the preferred and 240 shares of the common stock of this corporation; Geiger owned 10 shares of the preferred and 225 shares of the common stock. Gross was employed by the corporation as plant superintendent, and owned 25 shares of the common stock. Dietz was employed as maintenance superintendent, and owned. 5 shares of the preferred stock and 5 shares of the common stock of the corporation. The defendants conceived the idea of organizing a business of their own, to carry on the same kind of business as the Allied corporation. They were executives, but needed a man capable of conducting the practical affairs of the business. The approached Gross, who had such knowledge, and told him of their plans. Hallman's wife had purchased twelve machines that would be needed in this proposed enterprise. Gross was at that time earning $7,000 a year from the Allied Paper Bag Corporation, and Hallman, acting for himself and Geiger, guaranteed him that he would actually own 25% interest in the concern to be organized. He further said to Gross

that his remuneration would be on the basis of $7,000 a year, plus a 25% share of the profits in the new concern.

Thereafter Hallman and Geiger took Gross to New York City, introduced him to paper supply people as an individual thoroughly conversant with the paper products business, who was expected to start in his own business in Baltimore in the near future. They guaranteed Gross's financial and business ability, and the supply houses agreed they would supply Gross when he started in business. At a subsequent meeting between the plaintiffs and the defendant-appellees, it was agreed that Gross would act as agent for the wives of Hallman and Geiger until they severed their connection with the Allied Paper Bag Corporation, at which time the agency relationship would be abandoned and the parties would operate as partners. It was agreed the basis of the partnership arrangement was that Hallman and Geiger furnish capital to the amount of $40,000, and would own 75% of the business, and that Gross would organize the business and carry through its preliminary steps on the basis that he would own 25% of the business. Thereafter Gross, operating under the trade name of Columbia Paper Products Company, secured a lease of premises for the operation of the business, and paid the rental from the proceeds of checks given him by either the wife of Hallman or the wife of Geiger. Hallman and Geiger guaranteed to underwrite any loss that Gross might suffer individually.

In May, 1944, Gross left the employ of the Allied Paper Bag Company, to begin the business known as the Columbia Paper Products Company, it being understood that he was acting as agent of the wives of Hallman and Geiger, and with a further understanding that when certain circumstances permitted, Hallman and Geiger would become actively connected with the company and it would thereafter operate as a partnership between Hallman, Geiger and Gross, with Gross having a 25% interest therein.

Thereafter Gross required assistance in conducting the partnership, and Dietz, who was then management superintendent of the Allied Paper Bag Corporation, was induced to join in the venture on the basis that Gross would share with him his 25% of the business, to the extent of one-half thereof, and Dietz severed his connection with the Allied company. He supervised the building of certain machinery necessary for the contemplated business.

In August, 1944, the Allied Paper Bag Company sued the plaintiffs and the individual defendants, doing business as Columbia Paper Products Company, alleging that they were operating as partners, trading as the Columbia Paper Products Company. They denied the partnership, and as a result of this suit, and in settlement thereof, the individual defendants severed their connection with the Allied Paper Bag Company and agreed to turn back all of their stock, common and preferred, to the Allied Paper Bag Company, the plaintiffs agreeing to do likewise. It was then agreed that the individual defendants give their full time to the business of the Columbia Paper Products Company, which Gross had been operating as agent for their respective wives; and, that after December 4, 1944, the Columbia Paper Products Company would be and was operated as a partnership, with Hallman and Geiger owning 75% thereof and Gross and Dietz owning 25% thereof. Thereafter, the individual defendants became the dominant characters in the business, and the plaintiffs were relegated to "plant personnel mechanical supervisors positions"; that no articles of partnership were drawn; that plaintiffs had full confidence in the individual defendants who handled the administrative concerns of the company; that at the end of the year 1945 the individual defendants rendered the plaintiffs a financial statement, indicating that the firm had greatly prospered; that dispute arose between the plaintiffs and the individual defendants concerning distribution of the profits for the year 1945, and certain agreements between them for

the year 1946 were entered into; that on or about January 1, 1947, plaintiffs asked the individual defendants for a yearly statement, which was denied, and that the said defendants, for the first time, took the position that the plaintiffs were not partners and asked for their resignations. That at that time checks were drawn to the plaintiffs on the Columbia Paper Products Company, Incorporated, and until that time plaintiffs had no knowledge that the business had been incorporated, and upon inquiry at the State Tax Commissioner's office they verified the incorporation, and that the individual defendants were two of the incorporators.

It is charged that the plaintiffs believe and therefore aver that the assets of the partnership were transferred to the corporation. They charged the individual defendants with fraud, and aver that the holdings of the said company at the end of the year 1946 were of great value. These are the substantial averments of the amended bill of complaint, and it prayed:

"1. That a receiver be appointed for the assets of the Columbia Paper Products Company, Inc.

2. That an accounting be had of the affairs of the Columbia Paper Products Company (the partnership) as of December 31, 1946, and that your Orators be paid twenty-five per cent (25%) of the assets of the business as of that time.

3. That the defendants, each of them, be enjoined from further issuing any of the treasury stock of the Columbia Paper Products Company, Inc., or of any of the corporation stock owned by them in their own names, and therefor any stock of the corporation which has been heretofore disposed of, or is held by any parties other than the defendants Hallman and Geiger that they be made to account as to whom the stock was transferred and for what consideration.

Your Orators may have such other and further relief as their case may require."

A demurrer was filed to the original bill of complaint, which was sustained with leave to amend the same by

certain interlineation, which was done. Thereafter a joint answer was filed by the individual defendants to the amended bill of complaint. The answer is long and in great detail. It denies the partnership alleged in the bill and, generally, most of the allegations thereof. The answer admits the following:

1. "That Gross was introduced to a paper manufacturer in New York, but not in the manner that the complainants alleged that Gross was so introduced".

2. "That Gross did act as agent for the wives of Hallman and Geiger in a business owned by the said wives * * * that the agency arrangement was to continue until either Hallman or Geiger became a partner in the business and that it did so continue, but that said arrangement never did have any relationship with Gross ever becoming a partner in the business, since no such partnership was ever contemplated or agreed;"

3. "That Gross in his own name secured a lease of the premises for the operation of the business as alleged by the complainants and that as agent for the wives of Hallman and Geiger he operated the business under the trade name of Columbia Paper Products Company and that the question of loss to Gross in the event the business failed was discussed, but your respondents deny that either Hallman or Geiger guaranteed to Gross that they or either of them would 'underwrite any loss that Gross might suffer individually', although Gross, acting as said agent, was at all times fully protected against any loss that he could suffer for any acts done by him within the scope of his agency;"

4. "That Gross left the employ of Allied Paper Bag Corporation; that Gross acted as the agent of the wives of Hallman and Geiger; that Hallman and Geiger intended to become actively connected with the Company, but they" deny the partnership.

5. They say that "Gross suggested the employment of Dietz in the business before Gross severed his connections with Allied Paper Bag Corporation and that Dietz did supervise the building of certain machinery

for the contemplated business", but they deny that they were partners with the plaintiffs.

6. They admit they were sued by the Allied Paper Bag Corporation as alleged; that answers were filed denying any partnership between the plaintiffs and the individual defendants, but "admit that Hallman, Geiger, Gross and Dietz did compromise and settle said suit and delivered all of their common and preferred stock of the Allied Paper Bag Corporation as one of the incidents of said settlement".

There are other matters in the bill that might be referred to, but the admissions in the answer to the bill of complaint, above quoted, are sufficient for the purpose of this case.

On June 12, 1947, the plaintiffs filed a petition in the cause, in which they stated they desired to take the depositions of Hallman and Geiger, and "it is necessary for them to seek the production of certain documentary evidence pertinent to the case and to the issues involved". The prayer to the petition is: That the individual defendants "produce for the inspection of your petitioners and their counsel at the time of the taking of depositions the following books, records or papers" (which we will not at this time enumerate).

On September 18, 1947, the defendants filed a joint and several amended answer and exception to the said petition, the details of which it is not necessary here to set out, except to say that defendants allege that said discovery is unnecessary, illegal, inequitable, and would be a hardship and oppression practiced upon the defendants. They further say that the plaintiffs, in their petition for discovery, have not shown "good cause why the reliefs (or any of them) prayed by said petition should be granted"; that they have not shown that the documents prayed to be produced are relevant material, nor does the petition show the facts expected to be proved by them through the production of the documents prayed to be produced, nor have they designated specifically the particular books and records that contain

the specific information which they intend to prove, and how that proof is relevant and material to the cause.

On September 26, 1947, the plaintiffs filed a petition asking for the production of the following:

"1. Monthly inventories of said years;

2. Financial monthly statements;

3. Sales books for said years;

4. Sales accounts books for said years;

5. Accounts Receivable Journals for said years;

6. Purchase books for said years;

7. Cash receipts records for said years;

8. Journal books for said years;

9. General ledgers for said years;

10. Production records for said years." to be used in the examination of the individual defendants, to which the defendants filed a joint and several answer, exception and demurrer.

On October 1, 1947, the chancellor sustained the exception to the production of certain documents which the plaintiffs specifically prayed for in their petition of June 12, 1947, and ordered the production of the following documents specifically prayed in that petition:

"(b) A copy of the Power of Attorney held by the complainant Gross to carry on the business of Columbia Papers Products Company.

"(c) A copy of any writing which purports to have terminated the aforesaid agency agreement.

"(d) A copy of any agreement pertaining to any of the partnership's assets that might exist between the partnership and Mrs. Marcella Hallman and Mrs. Helen Geiger, wives of the defendants.

"(e) Copy of any bills of sales that might be in existence purporting to transfer assets of Mrs. Hallman and Mrs. Geiger to the partnership."

"(g) Lease or sub-lease, if any is in existence, pertaining to the rental of space for operations for the partnership Columbia Paper Products Company."

"(i) A copy of the partnership income tax returns of the Columbia Paper Products Company for the years 1944, 1945, and 1946."

The chancellor further ordered "that the exceptions of the defendants as to the illegality, inequity and the legal insufficiency of the plaintiffs' petition are hereby overruled, and any objections by way of demurrer are overruled."

On October 24, 1947, the chancellor ruled on the petition filed by the plaintiffs on September 26, 1947, "that the defendants' demurrer to said petition be and it is hereby overruled; and the exceptions to the granting of the relief prayed by said petition are hereby overruled and the petition granted; and the defendants are Ordered to produce the books and records asked for in said petition at the time of taking the defendants' depositions, provided that the defendants have such records in their possession or under their control."

The relief prayed for in these petitions filed by the plaintiffs is based on Discovery Rule 4, Part Two, subd. II, Rules of Practice and Procedure, 1941, 1947 Supplement to Code, page 2038, which provides in part as follows:

"Upon motion of any party showing good cause therefor and upon notice to all other parties, the court may, at any time in any proceedng, (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which may constitute or contain evidence material to any matter involved in the proceeding and which are in his possession, custody, or control; or * * *."

"Previous to the adoption of Discovery Rule 4, *supra,* such discovery was limited to evidence necessary to the party's own case. Under the new rule, the discovery is permitted of 'evidence material to any matter involved in the proceeding.' " This rule "is patterned after Rule 34 of the Federal Rules of Civil Procedure, 28 U. S. C. A.

following section 723c, and we may well look to the Federal courts as to the interpretation of the rule." *Eastern States Corp. v. Eisler,* 181 Md. 526, 529, 530, 30 A. 2d 867, 868.

Regarding the federal discovery rules it has been recently said:

"The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor,* 329 U. S. 495, 67 S. Ct. 385, 388, 91 L. Ed. 451.

It was also said in that case: "We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise."

Rule 4 has its limitations, and should never be granted if the information sought is in the possession of, or can readily be ascertained by the applicant. If it appears that the discovery asked for is made in bad faith, or for the purpose of annoyance, embarrassment or oppres-

sion; and if, in the course of the examination of a witness under this rule it becomes apparent that the applicant is acting in bad faith or for the purpose of annoyance, embarrassment or oppression, the matter should be brought to the attention of the chancellor. The proceedings under this rule are under the control of the chancellor, whose duty it is to see that they are conducted with fairness, for the purpose of discovering pertinent and relevant facts (not privileged) that pertain to the issues made by the pleadings, or for the discovery of such other facts not definitely known at the time, but which when discovered, are pertinent and material to the pleadings. This rule must be "accorded a broad and liberal treatment" so that its purpose will be accomplished.

In a petition asking for discovery, good cause must be shown why discovery should be made. It seems to be the position of the appellants: (1) That such a petition should definitely set out the matter desired, and the name of the person in whose possession it may be. (2) That the rule does not apply to the discovery of matters that may well be in existence but not definitely known by the petitioner. To adopt these views would be to give this rule a narrow and constricted interpretation, which would strip it of the use it was intended to serve. The rule must be given an interpretation sufficiently broad as to effectuate its purpose. The appellants' view would continue the trial of cases in the dark; cases under a liberal view will be tried in the light of day, and all facts relevant and material to the issues made by the pleadings would be brought to the attention of the chancellor. This was the intention of the rule, and as an instrument for the obtention of justice it is sound and salutary. If the action of the chancellor, in allowing discovery, is not arbitrary, illegal, capricious or unreasonable, it will not be disturbed by this court.

The appellants contend that the chancellor, in acting upon a discovery petition, cannot consider the allegations of the bill and answer. In *Eastern States Corporation*

*v. Eisler,* 181 Md. 526 at page 532, 30 A. 2d 867, Judge Collins quoted from *Employers' Mutual Liability Insurance Co. v. Blue Line Transfer Co.,* D. C. W. D. Mo., 1941, 2 F. R. D. 121, 124, as follows:

"The courts have had occasion to discuss the stage of the pleadings at which such a motion might be maintained. Mr. Holtzoff, in his admirable commentary on 'New Federal Procedure and the Courts,' at page 92, epitomizes and digests the rulings of the courts in the following apt language: 'Moreover, such a discovery should not be permitted until an answer is filed, since, until joinder of issue, it cannot be determined whether or not the desired documents or objects constitute or contain evidence material to an issue in controversy.' This text was supported in *Piest v. Tide Water Oil Co.,* D. C., 26 F. Supp. 295; *Kenealy v. Texas Co.,* D. C., 29 F. Supp. 502."

In the petitions here considered, the documents, instruments and other matters were specifically set out. The issues in the case had been made by the bill and answer, and it would be somewhat extreme to say that the chancellor should not consider the bill and answer in determining whether to permit discovery of the matters set out in the petition. We do not agree with this contention. The chancellor had the duty to determine whether the instruments prayed to be discovered were relevant, pertinent, and not privileged, or were unnecessary, or that the discovery was not asked for in good faith. Not only could he consult the pleadings for this purpose, but any other matter disclosed by the proceedings that might help him to correctly pass upon the matter. From the pleadings, the appellants might well stand in a fiduciary relationship to the appellees (*Anderson v. Watson,* 141 Md. 217, 118 A. 569), and the chancellor should give this matter consideration in passing upon the petitions here involved.

The appellants strongly urge that the case of *Eastern States Corp. v. Eisler, supra,* sustains their position, and that the ruling in that case requires a reversal in this

case. With this contention we do not agree. In that case the court ordered discovery before the issues in the case were made up by the pleadings. The appellants' demurrer to the bill of complaint was overruled. This court reversed that ruling. It said that inasmuch as the bill was legally insufficient to grant the relief prayed, the lower court was without jurisdiction to order discovery. It further called attention to the fact that the order for discovery was entirely too broad. In the case at bar issues had been made up by the amended bill and answer thereto, and the chancellor had power to grant discovery. His order for discovery was not too broad.

The chancellor in this case did not grant discovery of all matters prayed for, but sustained exceptions to various items, and it is provided in his order dated October 24, 1947, that the appellants are "to produce the books and records asked for in said petition at the time of taking the defendants' depositions, provided that the defendants have such records in their possession or under their control." It is a very easy thing for appellants to say they do not have these records, if such is a fact; and if they have them, and in the course of the examination of the appellants improper matter is attempted to be gone into, these matters can be called to the attention of the chancellor for his ruling. We entirely agree with the action of the chancellor, and are of opinion that no hardship will be worked upon the appellants; that the matters required to be discovered are relevant and material to the issues and do not involve questions of privilege.

The orders considered in this case decided nothing final. The purpose of the discovery was to find pertinent and material evidence, not privileged. No matter discovered in this process would be evidence unless it was pertinent and material and not privileged. If the chancellor in the trial of the case should rule on such matters, it is not conceivable that the party ruled against could stop the proceedings and take an appeal to this court. The matter would have to be raised on an appeal

578

from the final decree. There is nothing final in this proceeding. The appeals, therefore, from the orders passed by the chancellor on October 1, 1947, and October 24, 1947, will be dismissed.

*Appeals from orders of October 1, 1947, and October 24, 1947, dismissed, with costs to appellees.*