BARNES *v.* LEDNUM, Individually and as Executors, et al.

[No. 114, October Term, 1950.]

*Decided March 16, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*William H. Price,* with whom were *Staton, Whaley & Price* on the brief, for the appellant.

*J. Cookman Boyd, Jr.,* with whom were *Henry M. Decker, Jr., Henry P. Walters* and *Godfrey Child* on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from an order in a pending suit in equity denying plaintiff's petition for discovery. Defendants move to dismiss the appeal for the reason that the order is not a final appealable order and incidentally that it is a discretionary and therefore not appealable order.

In 1926 Ella M. Wilson, plaintiff's aunt, made a will, leaving all her estate to plaintiff, and appointed him her executor. In 1933 she married Robert I. Lednum, defendants' testator. On December 17, 1937, she died. On December 30, 1937, by an agreement between plaintiff and Mr. Lednum, the surviving husband, the husband agreed (1) not to renounce the will and (2) to pay then unpaid debts of testatrix, and plaintiff agreed to convey to the husband (1) a life estate in a farm and specified lots with buildings and improvements in Pocomoke City, and (2) a life estate in a note for $6,000 (balance) and the mortgage securing it and a note for $10,000 and the mortgage securing it, with full power to the husband (in each instance) "to sell or otherwise dispose of" the note and mortgage and "any and all investments into which the principal of said note and mortgage may hereafter be invested" during the life of the husband, "(the intention to exercise said power shall be evidenced by notice in writing to [plaintiff] and after the death of

said husband, if said power has not been exercised" by him, the note and mortgage or investments into which the proceeds may be invested to be the property of plaintiff, absolutely. All other property of testatrix was to be the property of plaintiff, absolutely. All covenants and agreements were to bind and inure to the benefit of heirs, executors and administrators and assigns. The fee value of all the real estate (other than the two mortgages) was about $6,800. By two assignments dated January 28, 1938, plaintiff assigned the two mortgages to Mr. Lednum for life with the powers stated in the agreement of December 30, 1937. After communications with Mr. Lednum and the late Mr. George H. Myers, his counsel, plaintiff by two assignments dated February 25, 1938, assigned the two mortgages to Mr. Lednum absolutely, superseding the January assignments and transferring all reversionary interest in plaintiff under them. These absolute assignments plaintiff sent to Mr. Lednum with a letter of the same date, stating that the absolute assignment were desired by Mr. Lednum and executed by plaintiff for the practical reason of convenience in dealing with purchasers, with the understanding by plaintiff that the execution of these assignments "in no way affects or prejudices the agreement of December 30, 1937 * * * [and] is not to be construed as an exercise of the power of disposition * * * in * * * [that] agreement * * * but that [the] provisions of [that agreement] * * * are effective as between you and myself", the execution of the absolute assignments "being intended only to put you in a position where as between yourself and any purchaser you can freely dispose of the notes and mortgages."

Mr. Lednum died on March 19, 1948, leaving a will by which he gave all his residuary estate to defendants, a nephew and the nephew's wife, and appointed them his executors. Mr. Lednum was totally blind at the time of his wife's death and for the rest of his life. In January, 1938, defendants came to live with him, and under his direction transacted business affairs for him.

On August 23, 1948, plaintiff filed a bill against defendants, individually and as executors, praying (A) answer under oath and discovery of (1) the property in which Mr. Lednum invested the $16,000 received by him from the liquidation of the two mortgages from the time he received it until his death, (2) the property, real and personal, remaining in his name at the time of his death, and (3) the property transferred by Mr. Lednum to, or in trust for, defendants or either of them since February 25, 1938, and the consideration paid; (B) that any property in which the $16,000 may have been invested or reinvested, that is now in the hands of defendants or either of them, be declared to be impressed with a trust in favor of plaintiff (if more than $16,000) or (if not more than $16,000) [subject] to an equitable lien to secure to plaintiff the payment of $16,000 with interest from Mr. Lednum's death; (C) that defendants be decreed to pay plaintiff $16,000 with interest, as may appear appropriate under the evidence; (D) assumption of jurisdiction over the administration of Mr. Lednum's estate; and (E) general relief. The bill alleges that Mr. Lednum "was possessed of a large amount of property in his own right and a considerable income independent of" his wife's estate, and the agreement of December 30, 1937, "was part of and collateral to a broader agreement between [plaintiff and Mr. Lednum]", a further part of which was that "the principal sum represented by [the two] mortgages, [$16,000], would not be sold or otherwise disposed of so as to eliminate [plaintiff's] remainder therein unless and until said sum or a part thereof became necessary to the maintenance and support of [Mr. Lednum]." The answer admits that Mr. Lednum "was possessed of property and estate independent of" his wife's estate, but denies that there was any agreement between plaintiff and him "which superseded or altered the absolute assignment" of the mortgages, and alleges that the absolute assignments transferred the mortgages to Mr. Lednum, "free

from all claims of * * * plaintiff as to the * * * mortgages or the proceeds thereof."

Defendant's demurrer to the bill was filed on September 21, 1948 and overruled on February 18, 1949. Defendant's answer was filed on July 15, 1949 and an amended answer on March 6, 1950. The bill alleges, among other things, that testatrix' estate consisted of real and personal property, including the two notes and mortgages specifically mentioned, and that Mr. Lednum liquidated the mortgages without loss of principal and reinvested the resulting principal of $16,000, but plaintiff is not informed as to the nature or the disposition of the reinvestment. Defendants' answer denied knowledge of these allegations, neither admitted nor denied them but demanded strict proof. The amended answer admits these allegations and alleges that Mr. Lednum "used the proceeds [of the mortgages] in the operation and conducting of his canning business." The inventory of personalty filed by defendants as executors included only "one-third interest in" four named motor vehicles, aggregating $1,450.

On May 11, 1950 plaintiff filed a "request to admit facts and genuineness of documents * * * pursuant to Discovery Rule 6", which defendants answered on June 15, 1950. The answer admits, among other things, the genuineness of copies of a number of letters and other documents, including plaintiff's letter of February 25, 1938 to Mr. Lednum and the registry receipt therefor; and also admits that the $6,000 mortgage was assigned by Mr. Lednum for foreclosure, was foreclosed, the assignee's check to Mr. Lednum's order, for $6,289 (including $289 interest), was deposited to the credit of Mr. Lednum's account, defendant Mary endorsed the check for deposit and made the deposit for Mr. Lednum, "who used [the] $6,289 in connection with his business, which was that of a tomato canning factory;" and that on February 20, 1939 the $10,000 mortgage was released and replaced by a new mortgage to Mr. Lednum for $13,500, the only money that passed was the $3,500 excess of

the new mortgage over the old, on March 11, 1939 the new mortgage was assigned of record to defendant Mary, on June 30, 1943 the mortgagors executed a new mortgage to Baltimore Life Insurance Company for $13,000 to refund the $13,500 mortgage, the company issued a check for $13,000 to the order of the mortgagors, which was endorsed by them and defendant Mary, and the proceeds were deposited in a joint bank account entitled "R. I. Lednum or Mary W. Lednum."

On June 28, 1950, plaintiff filed a "petition for discovery under Discovery Rule 4" in which he prayed an order (1) (2) requiring defendants to authorize two named banks respectively to exhibit to plaintiff and permit him to copy such records of the bank as will show deposits and withdrawals from any accounts in the names of Mr. Lednum, R. I. Lednum and Company and "Robert I. Lednum and/or Mary W. Lednum" or like names between December 31, 1937 and July 15, 1949, (3) requiring defendants to exhibit to plaintiff the books and records of Mr. Lednum, R. I. Lednum and Company and defendant Mary between the same dates, including all cancelled checks and income tax returns and taxpayer's copy of federal estate tax return, if any, and (4) permitting plaintiff to copy any part of the books or records showing the deposit, in any bank accounts, of the proceeds from collection of the mortgages and any new investments made by Mr. Lednum or defendant Mary or defendant Ralph or R. I. Lednum and Company or by the partnership, of whatever name, formerly composed of Mr. Lednum and defendants or either of them, and (5) general relief. Plaintiff's petition alleges facts (most of which we have stated) and reasons (in general, we think, too obvious for elaboration here) why relief by discovery is necessary. On July 20, 1950 defendants answered the petition, denying plaintiff's right or need of discovery. The answer says, among other things, that none of the books and records will disclose any investment of the $16,000 or any part of it, and that defendants "in their amended answer" and in their

answers to requests to admit "have made full disclosure of all facts requested, which are pertinent to this cause." On August 25, 1950 the court denied the relief prayed in the petition. The order recites that plaintiff offered to produce witnesses, defendants "objected to the taking of any testimony on the grounds that no discovery was necessary until * * * plaintiff had established his ownership to the proceeds of the mortgages * * *. The court is of the opinion that the primary issue in dispute in this case is the ownership of the proceeds of [the] mortgages and until this ownership is established * * * plaintiff is not entitled to discovery as prayed * * *."

In this court the questions argued, orally and in the briefs, were (1) whether the order is appealable and (2) whether it was a lawful and proper exercise of judicial discretion. The ultimate questions in the case on the merits are not now before us and, as such, have not been argued. Some questions which may be presented when this case is disposed of on the merits are: (1) Did any part of the $16,000 become necessary to the maintenance and support of Mr. Lednum, and was it so used? (2) Was it needed and used in Mr. Lednum's business? (3) Was it given away by Mr. Lednum during his life to defendants or either of them? (4) Was it appropriated by defendants or either of them to their own use without Mr. Lednum's knowledge or consent? (5) Was the agreement of December 31, 1937 part of "a broader agreement", as alleged by plaintiff? (6) Did Mr. Lednum give plaintiff notice of intention to exercise his power of disposition? (7) Did he intend and attempt to exercise the power? (8) Did he validly exercise the power? (9) Was the 1937 agreement narrowed by the absolute mortgage assignments of February 25, 1938? In short, what was the whole agreement, written or oral or partly both, between plaintiff and Mr. Lednum? Was it performed, or was it broken by both or either? Doubtless plaintiff and defendants would agree as to the materiality or relevance of few of these questions. For present purposes, it is to be noted that

some of these questions are questions of law, some are questions of fact, and the ultimate questions are, or at least may be, mixed questions of law and fact. The question of ownership of the $16,000, proceeds of the mortgages, is not a single question of law or fact, but depends, in part at least, upon the facts which are proved. The facts proved in turn depend, in part at least, upon what may be proved through discovery. In other words, the question of ownership is the end, not the beginning, of the questions in the case.

If every order granting or denying discovery is a final appealable order, it would seem that every ruling on evidence would be separately appealable. In *Hallman v. Gross*, 190 Md. 563, 59 A. 2d 304, we dismissed the appeal from an order granting discovery. Apparently recognizing this difficulty, plaintiff seeks to narrow his contention by relying on *Newcomer v. Miller*, 166 Md. 675, 172 A. 242, 92 A. L. R. 1043, and especially on *Purdum v. Lilly*, 182 Md. 612, 620-622, 35 A. 2d 805, as holding final and appealable an order, denying discovery to a plaintiff, which is tantamount to a denial of the means of further prosecuting the suit. *Newcomer v. Miller* was not a mere application for discovery, though it was said to be similar in results to "the sustaining of a demurrer to a bill for discovery." 166 Md. 682, 172 A. 244. It was an application by the pledgees of all the stock of a corporation in receivership for leave to examine the books of the corporation. In the absence of a receivership, the right of a stockholder to examine the books of the corporation is a substantive legal right, independent of any purpose of discovery in pending or contemplated litigation, and enforceable by *mandamus*. *Weihenmayer v. Bitner*, 88 Md. 325, 42 A. 245, 45 L. R. A. 446; It was held in *Newcomer v. Miller* that, on an application not without reasonable grounds, the receivership court should permit exercise of the right. *Purdum v. Lilly* was a proceeding for a writ *de lunatico inquirendo*. The alleged *non compos* was living with another defendant. The answer of the defendants alleged that it would be

harmful for her to be compelled to appear before a sheriff's jury. In the circumstances denial of an examination by a physician under Discovery Rule 5 was tantamount to a denial of the means of further prosecuting the case. This court said, "We feel that it would be futile for her [petitioner] to present her contentions to the sheriff's jury unless she were fortified by medical evidence on the only question involved, namely, the competency *vel non* of Mrs. Lilly. Costs in the case would only be multiplied by proceeding with the hearing, with no prospect except an adverse adjudication, and a subsequent appeal to this court from a decree ratifying the inquisition of the sheriff's jury." 182 Md. 621-622, 35 A. 2d 809.

In the instant case we think *Purdum v. Lilly* is not controlling and the order is not appealable. If without discovery plaintiff is unable to prove "ownership of the $16,000" and for that reason the bill is dismissed, an appeal from such a final decree will present for review the interlocutory denial of discovery. We cannot assume that such a decree will be the inevitable result of this denial of discovery. The order seems to contemplate that before any final decree—and before final denial of discovery—some opportunity will be given to prove "ownership" (whatever that may mean), definitely or tentatively. Moreover, we cannot assume that without discovery plaintiff cannot prove ownership. To get access to the banks' records, discovery by defendants does not seem either necessary or proper. The direct method would be by *subpoena duces tecum,* at the trial or at pre-trial depositions. "Authority" from defendants is not necessary. It is not impossible that the bank records may disclose as much or more than defendants' records.

In holding that the order denying discovery is not appealable, we do not suggest that it was a proper exercise of judicial discretion. See *Day v. State,* 196 Md. 384, 389-390, 76 A. 2d 729, 731, quoting *Newcomer v. Miller, supra,* as to review of judicial discretion. Modern discovery statutes or rules are intended to facilitate discovery, not to stimulate the ingenuity of lawyers and

judges to make the pursuit of discovery an obstacle race. In *Eastern States Corp. v. Eisler*, 181 Md. 526, 531, 30 A. 2d 867, we denied discovery for the purpose of a "fishing expedition" in a case in which a demurrer to the bill was pending and had been sustained before the case reached this court. In *Hallman v. Gross*, 190 Md. 563, 574, 59 A. 2d 304, 309 (a case which was at issue) we quoted the statement in *Hickman v. Taylor*, 329 U. S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451, "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case."

For ten years defendants were Mr. Lednum's eyes and hands. They handled for him $16,000 in which plaintiff once had some reversionary interest, however slight or remote, subject to a power of defeasance, however broad. If defendants are right on the merits, plaintiff's reversionary interest may have been close to *nil,* Mr. Lednum's power almost—or quite—complete. On those questions we intimate no opinion. But whatever the ultimate rights of the parties, we see no justification for any evasion or lack of candor on defendants' part in disclosing the facts, or for regarding discovery as an intrusion upon defendants' "private, personal and secret books and papers."

It is for the lower court not for us on this appeal, to pass upon any specific question presented on any application for discovery, *e. g.,* a contention of defendants that tax returns "are private papers, especially protected from scrutiny by the Constitution and Statutes of the United States of America," or any question whether any particular request is too broad. In terms the third prayer might perhaps be too broad if the Lednum business was large and active, but if it is true (as defendants suggest) that none of the banks' records or defendants' records would disclose what became of the $16,000, then the records must be too meager for production of them to impose any undue burden.

*Appeal dismissed, with costs.*