LANG ET AL. *v.* CATTERTON ET AL.

[No. 68, September Term, 1972.]

*Decided December 7, 1972.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ., and ALFRED L. SCANLAN, Associate Judge of the Court of Special Appeals, specially assigned.

*Stephen H. Sachs,* with whom were *Elizabeth Logan Nilson* and *Sachs & Baron* on the brief, for appellants.

*Anthony A. Abato, Jr.,* with whom were *Cosimo C. Abato* and *Bracken & Abato* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

In *Smiley v. Atkinson,* 265 Md. 129, 287 A. 2d 770

(1972), we adopted the opinion of Judge Powers of the Court of Special Appeals in that same case, 12 Md. App. 543, 280 A. 2d 277 (1971), in which it was held that the filing of an appeal from a nonappealable interlocutory order did not divest the trial court of jurisdiction. We shall here refine and interpret that holding in the process of dismissing this appeal.

This case boils down to a dispute between two individuals and their labor union. Appellants, George E. Lang, Jr., (Lang) and Forrest A. Sours (Sours), claim they were hired as millwright general foreman and foreman, respectively, by a contractor for its millwright work on construction of the new main post office in Baltimore. They both claimed to be members in good standing of Local No. 101, United Brotherhood of Carpenters and Joiners of America. Appellees, Benjamin A. Catterton (Catterton) and David Meadows (Meadows), are described as president and business agent, respectively, of that local union. Lang and Sours allege that Meadows and Catterton visited Walter Kentch, field superintendent for their employer, and advised him that if Lang and Sours "were put on the job . . . [Catterton and Meadows] would see to it that there would not be an adequate supply of carpenters and millwrights for said job, and that any men supplied would not be competent to handle said job; that there would be 'trouble' on the job; that . . . Meadows, as business agent, would make himself unavailable to resolve disputes; that the job would be continually disrupted, and that the said Walter Kentch might be subjected to bodily harm." It is also claimed that Catterton and Meadows advised Kentch that Lang "was incompetent and incapable of serving as millwright foreman" on the job. Lang and Sours sued Catterton and Meadows for tortious interference with their contract, claiming they were denied employment as a result of the actions of the defendants. Lang also sued in slander.

A motion raising preliminary objections was filed under Maryland Rule 323 a (1). It claimed that the Na-

tional Labor Relations Board had exclusive jurisdiction over the subject matter "under Sections 7 and 8 of the National Labor Relations Act, as amended, 49 Stat. 452, as amended; 29 U.S.C., Sec. 157, 158"; that the plaintiffs had previously submitted the matter to that board by filing a charge alleging the acts which were alleged in the declaration; and that the plaintiffs were "required to exhaust their intraunion remedies available under the Constitution and Laws of the United Brotherhood of Carpenters and Joiners of America before the instant action [would] lie." In a comprehensive opinion Judge Sodaro in the Superior Court of Baltimore City held that the motion should be granted with reference to the claims for tortious interference with contract, but he denied the motion as to the slander claim. The appeal here is from that action.

Catterton and Meadows noted that in this matter there was no "express determination that there [was] no just reason for delay" and no "express direction for the entry of [a final] judgment" under Maryland Rule 605 a. Accordingly, in this Court they moved under Rule 835 b (1) for dismissal of the appeal.[1] Appellants state that "their right of appeal from the decision of the lower court dismissing the tortious interference claims does not depend on compliance with Maryland Rule 605 (a)," giving three reasons, (1) that under Code (1957) Art. 5, § 1 a party may appeal "from any final judgment or determination of a court of law in any civil suit or action" and that "[t]he accepted test for the operative phrase . . . 'final judgment or determination' " was said in *McCormick v. St. Francis DeSales Church*, 219 Md. 422, 149 A. 2d 768 (1959), to be "when it puts the plaintiff out of court and denies him the means of further prosecuting his case against the moving parties"; (2) that as to Sours his entire claim was dismissed, thus constituting a final order within the meaning of Art. 5, § 1; and (3) that Judge Sodaro passed an order *nunc pro tunc* on September 15, 1972, entering a final judgment.

---

1. Erroneously labeled in their motion as Rule 1035 b(1), a similar rule applicable to the Court of Special Appeals.

### (i)

An attempt to establish the original order of Judge Sodaro as an appealable final judgment "would be about as futile as shoveling smoke," to use the language of Judge McWilliams for the Court in *Suitland Dev. v. Merchants Mort.*, 254 Md. 43, 53, 254 A. 2d 359 (1969). It would be at variance with the prior holdings of this Court under Rule 605 a and of numerous federal courts under its federal counterpart, Fed. R. Civ. P. 54(b). The right of appeal is not denied, but the time for taking the appeal is regulated in the interest of judicial administration and to prevent piecemeal appeals.

### (ii)

The argument relative to Sours overlooks the latter part of Rule 605 a and the broad language there used. The rule states:

> "In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

The situation with reference to Sours is analogous to that where there has been a suit against an individual, he in turn has brought a third-party claim, and there has been a determination of the original suit unfavorably to the defendant without a determination of the third-party claim and without compliance with Rule 605 a, precisely the situation which existed in *Brooks v. Ford Motor Credit Co.*, 261 Md. 278, 274 A. 2d 345 (1971). There Judge Singley said for the Court:

> "Once Brooks had impleaded Archway, he could not separate the original claim from the

third-party claim for purposes of appeal without complying with the provisions of Rule 605 a . . . .

"Rule 605 a is virtually identical with Federal Rule 54 (b), *Picking v. State Finance Corp.* . . . 257 Md. 554 [, 263 A. 2d 572 (1970),] and cases cited at 557, which has been generally read to mean that in the absence of the certification of the trial judge, an adjudication of one of the claims in a third-party suit is not a final judgment from which an appeal will lie." *Id.* at 281-82.

### (iii)

Lang and Sours printed as an appendix to their reply brief an order passed by Judge Sodaro on September 15, 1972. It reads:

"The Court having, by memorandum opinion dated March 7, 1972, held, inter alia, that Defendants' Motions Raising Preliminary Objection should be granted with respect to Count I of the claim of George E. Lang, Jr., and in the claim of Forrest A. Sours;

"And the Court further expressly determining that there is no just reason for delay in the disposition of said claims,

"It is, by the Superior Court of Baltimore City, this 15th day of September, 1972, ORDERED

"1. That the Defendants' Motions Raising Preliminary Objection be granted with respect to Count I in the claim of George E. Lang, Jr. and in the claim of Forrest A. Sours and that said claims are dismissed nunc pro tunc as of March 7, 1972; and

"2. That final judgment be and it is hereby entered in favor of Defendants as to Count I in the claim of George E. Lang, Jr. and in the

claim of Forrest A. Sours, costs to be paid by Plaintiffs.

s/ ANSELM SODARO,
Judge.

"Order of Final Judgment consented to:

s/ COSIMO C. ABATO,
Date 9/15/72

s/ ANTHONY A. ABATO, JR.,
Date 9/15/72

Attorneys for Defendants.

s/ STEPHEN H. SACHS,
Date 9/15/72

Attorney for Plaintiffs."

There are three reasons for rejecting this belated attempt to comply with Rule 605 a, the first two of which may be stated succinctly.

### a.

It is elementary that this Court does not consider any matter not in the record certified to it by the lower court from whence it comes. Although Judge Sodaro's order is printed in the appendix to the appellant's reply brief, no one has taken the trouble to have such order certified to us by the Superior Court of Baltimore City by way of supplementation of the record. It is not before us.

### b.

It must be remembered that this was an action at law and, therefore, unlike equity actions, an order entered in open court may be reflected in docket entries without being reduced to writing. The docket entries show the granting on March 7 of the motions raising preliminary objections to the tortious interference with contract claims. It will be observed from an examination of the September 15 order that although it purported to grant

the motions relative to those claims—a redundant act—and to dismiss those claims *nunc pro tunc* as of March 7, the order entering final judgment was not entered *nunc pro tunc*. Thus, the situation is but little different from that in *Merlands Club v. Messall*, 238 Md. 359, 208 A. 2d 687 (1965). There the appeal was filed on July 27 after a judgment *nisi* on July 24. The judgment absolute was not entered until July 28. Since the appeal there was entered before the final judgment, it was dismissed as not having been from a final judgment. If the September 15 order were properly before us, it too would have entered a final judgment after the order for appeal and thus this appeal, even considering that order, would not be from a final judgment.

c.

We shall consider this case as though the record had been supplemented by the passage of an order *nunc pro tunc* for a final judgment. That there may be no misunderstanding from the fact that the order was passed by consent, let us once again reiterate that jurisdiction may not be conferred upon this Court by consent of the parties.

In *Smiley*, as we previously have indicated, we adopted the opinion of the Court of Special Appeals. In that case there was a motion for physical examination of the plaintiff and a motion for continuance. Both were filed one day before the trial was scheduled to begin before a jury. An appeal was filed when those motions were denied. It was contended below and on appeal that the appeal divested the trial court of jurisdiction to proceed with the case. The trial judge disagreed and ordered the trial to proceed, which it did.

In the opinion for the Court of Special Appeals, Judge Powers quoted from *Barnes v. Lednum*, 197 Md. 398, 79 A. 2d 520 (1951), where Judge Markell said for this Court:

"If every order granting or denying discovery is a final appealable order, it would seem

that every ruling on evidence would be separately appealable." *Id.* at 405.

After quoting from *Raimondi v. State,* 8 Md. App. 468, 261 A. 2d 40 (1970), where the Court of Special Appeals held that the filing of the appeal did not divest the trial court of jurisdiction and need not stay further proceedings in a case where the attempted appeal was from a motion to dismiss an indictment alleging that the case had received such widespread publicity that the defendant could not obtain a fair trial anywhere in the State within the foreseeable future, Judge Powers then said:

"Should a broader expression be required, we specifically hold that the rule we stated in *Raimondi* applies with equal force to civil cases. To apply any other rule would be utterly unthinkable. Any party would then be able, at any time before final judgment, to bring the trial of a case to an abrupt halt by merely filing an order for appeal from any ruling of the court. Control of the judicial process would thus pass from the courts to the parties and their counsel. Mistrials and continuances would be available without limitation at the whim of any party. The trial court must have, and does have, the power to determine whether its jurisdiction to proceed has been ousted. Should any abuse of that power ever arise, such abuse could undoubtedly be corrected by prompt appellate action." *Id.* at 550-51.

The background of Fed. R. Civ. P. 54(b), the parent of our Rule 605 a, was set forth by Mr. Justice Burton for the Supreme Court in *Sears, Roebuck and Co. v. Mackey,* 351 U. S. 427, 76 S. Ct. 895, 100 L. Ed. 1297 (1956), where he said:

"To meet the demonstrated need for flexibility, the District Court is used as a 'dispatcher.' It is permitted to determine, in the first instance,

the appropriate *time when each 'final decision'* upon 'one or more but less than all' of the claims in a multiple claims action is ready for appeal. This arrangement already has lent welcome certainty to the appellate procedure. Its 'negative effect' has met with uniform approval. The effect so referred to is the rule's specific requirement that for 'one or more but less than all' multiple claims to become appealable, the District Court must make both 'an express determination that there is no just reason for delay' and 'an express direction for the entry of judgment.' A party adversely affected by a final decision thus knows that his time for appeal will *not* run against him until this certification has been made." (Emphasis in the original.) *Id.* at 435-36.

In 3 Barron & Holtzoff, *Federal Practice and Procedure* § 1193, at 25, (Wright ed. 1958) the federal rule is discussed. The authors obviously believe that the preferable practice where "through inadvertence" the trial court has not made a certification under the rule is to permit the parties to obtain a proper order *nunc pro tunc.* They note, however, that as of the time the work was written at least one court had taken the position that the trial court lacked jurisdiction to enter such an order after the original appeal had been taken, a position criticized by the authors as "unsound." Unsound or not, it seems to have grown into the majority view if one may judge by the annotations in that work, although apparently only a small number of courts have been obliged to address themselves to the point. The authors cite but three cases in support of their position. One is *Vale v. Bonnett,* 191 F. 2d 334, 89 U.S. App. D.C. 116 (D.C. Cir. 1951), which can hardly be called enthusiastic in support of such a rule. The court there noted that in the order sustaining a motion for summary judgment the trial court had said that "the complaint [was] *finally*

dismissed." (Italics supplied by the U.S. Court of Appeals.) It then said:

"This, with expressions in an opinion filed by the trial court, is sufficient basis for a nunc pro tunc order as to the matters contained in this amendatory order. While we do not consider the securing of such an order good practice, at least in the relatively early stage of the general enforcement of Rule 54 (b) we shall hear the appeal rather than remand and require the parties to start anew." *Id.* at 335.

The first case in point of time is *Remington Rand Inc. v. Societe Internationale,* 188 F. 2d 1011 (D.C. Cir. 1951). There is no discussion of such a rule in that case. As it was put in *Vale*:

"The Remington Rand opinion does not mention this issue but the situation there was the same as here in essentials. In that case, Rule 54 (b) had not been complied with at the time of appeal but, after the appeal had been docketed here, a nunc pro tunc order (similar to the one here) had been procured and there was consent thereto by all parties. This court, in considering that appeal on the merits, obviously held that Rule 54 (b) had been sufficiently complied with." *Id.* at 335.

The third case is *United States v. Peerless Insurance Company,* 374 F. 2d 942 (4th Cir. 1967). There the three judge panel included two Maryland judges, Circuit Judge Soboleff (a former Chief Judge of this Court), and District Judge Kaufman. A default judgment was entered against one of the defendants and it appealed. Judge Craven said for the court:

"Although the district court signed the judgments from which appeal is now attempted, there is no indication in the record that there was ever issued an express direction to the clerk

for the entry of such judgments, nor was there any determination that there was no just reason for delay of such entry." *Id.* at 943.

After the appeals were docketed an agreement was made between counsel for all parties resulting in dismissal of the complaint against the apparently remaining party. It was urged that the effect of the dismissal was to confer upon the appellate court jurisdiction to hear the appeal of Peerless, that this was not dissimilar from that of a district court in a proper situation issuing the certificate under Rule 54 (b) *nunc pro tunc.* The court interpreted the judgment as being interlocutory in nature by reference to Rule 54 (b) and as such subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

In *District 65, Etc. v. McKague,* 216 F. 2d 153, 155 (3d Cir. 1954), there was a suit against a clerk of court and an attorney. The case was dismissed as to the clerk, but not as to the attorney. No finding was made under Rule 54 (b). An appeal was dismissed because of the absence of this finding. Between the time of argument on appeal and the court's decision a *nunc pro tunc* order was obtained which was used as the basis for a petition for rehearing in the U.S. Court of Appeals. The court stated, "[T]he court below was without jurisdiction to enter any order which would affect the status of the appeal." To like effect *see Bush v. United Benefit Fire Insurance Company,* 311 F. 2d 893, 894 (5th Cir. 1963), and *Island Service Company v. Perez,* 255 F. 2d 559, 561 (9th Cir. 1957). In the latter case the court added:

"The appeal should always be dismissed, since this provision is not only for the benefit of litigants, but for the protection of the court against multiple appeals in a single cause. We particularly now disapprove of the practice of holding such an appeal in abeyance and in effect directing the trial judge to enter a nunc

pro tunc order certifying 'that no just reason for delay exists.' " *Id.* at 561.

In *Stacy v. Burke,* 259 Md. 390, 269 A. 2d 837 (1970), a trial judge dismissed a bill of complaint. An appeal and supersedeas bond were filed. Then, apparently *sua sponte,* the trial judge on that same day withdrew the decree and the opinion upon which it was based. She then ordered the court reporter to furnish testimony in the case. Thereafter an opinion and decree were filed deciding the case contrary to the first decision. Judge Barnes for the Court quoted from *Vancherie v. Siperly,* 243 Md. 366, 375, 221 A. 2d 356 (1966). We held the chancellor had no power to revoke the first decree because an appeal had already been entered.

In *Vancherie,* there was a second motion for new trial filed following an earlier determination by the trial judge that there had been no interference with the deliberations of a jury. Judge Horney there said for the Court after noting that time had already elapsed for the filing of another motion for a new trial:

> "Even more to the point, an appeal having been entered, the lower court lacked jurisdiction to take any further action in the case with respect to the subject matter of the appeal until the receipt of the mandate from this Court after the appeal had been heard and decided. This is so because the perfection of the appeal brought the subject matter of the appeal within the exclusive jurisdiction of this Court and suspended the authority of the lower court over it during the pendency of the appeal. See *State v. Jacobs,* 242 Md. 538, 219 A. 2d 836 (1966) ; *Gilliam v. Moog Industries,* 239 Md. 107, 210 A. 2d 390 (1965) ; *Bullock v. Director,* 231 Md. 629, 190 A. 2d 789 (1963)." *Id.* at 375.

In *State v. Jacobs,* 242 Md. 538, 219 A. 2d 836 (1966), Jacobs filed a petition for post conviction relief. This was denied on September 29. On October 16 he filed an

application for leave to appeal to this Court. On December 14, while that application was still pending, the trial court withdrew its prior order denying post conviction relief and granted a new trial. The State then applied for leave to appeal from that order which was granted. Here Judge Oppenheimer said for the Court:

"While, in this case, the filing of the application for leave to appeal did not mean that this Court would hear the appeal, unless the application were granted, and while in *Gilliam* a direct appeal was involved, the rationale of both *Bullock* and *Gilliam* nevertheless applies. The filing of the application brought the case within this Court's jurisdiction, subject to its further action. Until the Court granted or denied the application, the power of the lower court to change the order previously entered was suspended. The court's subsequent order, reversing its prior decision, was not incidental or procedural, but sought to reverse the prior order in which relief was denied, and, instead, to award a new trial. The subsequent order was beyond the jurisdiction of the lower court while the application for leave to appeal was still pending." *Id.* at 541.

In *Gilliam v. Moog Industries*, 239 Md. 107, 210 A. 2d 390 (1965), a writ of subpoena was quashed on July 9. On July 29 parties for the first time raised the question of a new act which had become effective June 1. They asked the court to exercise its revisory power on the basis of that act and to set aside the quashing of the summons. On August 5 an appeal was filed. On August 13 the trial judge overruled the motion to set aside the quashing of the writ. Judge Hammond for the Court said that the trial judge had no power to set aside the quashing of the writ of summons because of the filing of the notice of appeal and the fact that the movant had not elected to dismiss the appeal and rely on the motion,

citing *Visnich v. Washington Suburban Sanitary Commission,* 226 Md. 589, 174 A. 2d 718 (1961), which held to like effect, and *Tiller v. Elfenbein,* 205 Md. 14, 106 A. 2d 42 (1954).

In *Bullock v. Director,* 231 Md. 629, 190 A. 2d 789 (1963), a trial was held on November 20, 1962, in which it was determined that Bullock was a defective delinquent. Previously the Criminal Court of Baltimore had ordered the case removed to Howard County for trial. The State moved to remand the matter to the Criminal Court of Baltimore. The motion was granted on July 18, 1962, and Bullock appealed to this Court. The opinion affirming the remand was filed on December 17, 1962. This Court noted that Bullock was tried below at a time when his appeal to determine which was the proper tribunal to try him was pending. Judge Prescott there said for the Court:

"An appeal to this Court from a *nisi prius* court does not necessarily stay all further proceedings in the trial court, nor does it strip said court of all power over the proceeding in which the appeal has been taken. The trial court may act with reference to matters not relating to the subject matter of, or affecting, the proceeding; make such orders and decrees as may be necessary for the protection and preservation of the subject matter of the appeal; and it may do anything that may be necessary for the presentation of the case in this Court, or in furtherance of the appeal. But, when an appeal is taken, it does affect the operation or execution of the order, judgment or decree from which the appeal is taken, and any matters embraced therein. After the appeal has been perfected, this Court is vested with the exclusive power and jurisdiction over the subject matter of the proceedings, and the authority and control of the lower court with reference thereto are suspended.

"In the appeal from the order of the Circuit Court for Howard County, *Bullock v. State,* 230 Md. 280, 186 A. 2d 888, the 'meat,' or subject matter, of the appeal was whether that court or the Criminal Court of Baltimore had jurisdiction to determine the question of Bullock's defective delinquency. The power of the Criminal Court of Baltimore to make this determination (although we decided that that court was the proper one to try him) was, we think, suspended during pendency of the appeal, during which time this Court had exclusive jurisdiction over the subject matter of said appeal." *Id.* at 633-34.

In *Tiller,* a case extensively quoted and followed, a final judgment was entered after rejection of a motion for a new trial. An appeal was then filed. Some three weeks later a motion for reargument of the motion for a new trial was filed. The plaintiff moved that the motion for reargument be not received on the ground that the trial court had no jurisdiction to reopen the matter after passing on the original motion and the entry of an appeal. The defendant dismissed his appeal. The trial court overruled the plaintiff's motion *ne recipiatur,* granted the motion for reargument and granted a new trial as to damages only. The defendant then filed a written motion to vacate the judgment, supplementing an oral motion to that effect which he had made at the hearing. This motion was granted and the plaintiff then filed an appeal from the action of the trial court in vacating the judgment and granting a partial new trial, contending that the trial court had no jurisdiction to vacate the judgment after the entry of the appeal and the enrollment of the judgment. Judge Henderson there said for the Court:

"We think it is a sound policy that allows the trial court, despite an appeal, to retain its control over the judgment for thirty days after its

entry, and for such reasonable time thereafter as may serve the court's convenience in disposing of a motion seasonably made, as contemplated by the Rules. On the other hand the exercise of the court's power to act on the motion should not be stayed by the entry of an appeal, so as to work a postponement of the hearing of the motion, any more than the filing of the motion should postpone the time for, or hearing of, the appeal, for this would be capable of abuse, as suggested. We hold that, unless the appeal is dismissed when the motion comes on for hearing, the appellant must elect between his motion and his appeal. If the appeal is dismissed before the hearing, as in the instant case, the motion stands for hearing as though no appeal has been entered." *Id.* at 21.

This case is distinguishable from *Keystone Eng. Corp. v. Sutter,* 196 Md. 620, 78 A. 2d 191 (1951). There a case was tried before a jury in the Circuit Court for Kent County. The plaintiff moved for a directed verdict and the court granted the motion. A counterclaim was withdrawn in open court by the defendant after leave was first granted. The verdict and the withdrawal of the counterclaim were on April 27. An order for appeal was filed on May 18 without further action in the case. There was no motion to dismiss the appeal. After argument in this Court, when counsel became aware of the lack of a judgment, application was made to the judge of the Circuit Court for Kent County who had heard the case and "a judgment was entered in favor of the defendant against the plaintiff for costs, *nunc pro tunc,* May 2, 1950." An agreement of counsel was filed in this Court to the effect that the docket entries showing a record of the judgment be included in the transcript sent to this Court. This Court then considered the case, although Chief Judge Marbury said for the Court, "In so doing, however, we are not in any way relaxing the rule that there must be a final determination in the

court below, before an appeal can be brought here." It will be noted that *Keystone* involved a mere perfunctory entry of a final judgment, a matter requiring no consideration on the part of the trial judge, an entry now mandated by Rule 567 f to be entered by the clerk "as of course" in the absence of a motion for a new trial within the time prescribed by Rule 567 a.

Here, if the trial judge is to perform his duty as a "dispatcher," as mentioned by Mr. Justice Burton in *Sears,* thought must be given; no perfunctory order is involved. The trial judge must make a determination as to whether the case is or is not one in which there is no just reason for delay. The determination is whether a final judgment should in fact be entered at that time. The determination is not that of counsel, but that of the Court. Therefore, the fact that counsel might consent to the order would not and could not be the determining factor.

In *Smiley* the appeal was from an order clearly interlocutory, one that under no stretch of the imagination could be the subject of appellate review until after a determination of the cause upon its merits.

The thread that seems to run through the cases in which it has been held that the trial court's jurisdiction has been ousted by appeal is that once an appeal has been entered, or a petition for leave to appeal has been filed as in Jacobs, that the trial court is without power to pass an order, to use the words of the court in *District 65,* "which would affect the status of the appeal." Thus, it will be seen in *Stacy* that the effect of the trial court's order was to pull the rug out from under the appeal, which it possibly was intended to do. Orders which affect the " 'meat,' or subject matter, of the appeal," to borrow the words of Judge Prescott in *Bullock,* have not been permitted. No constitutional issue was involved in *Smiley* and the subsequent actions of the trial court were not such as were calculated to affect the status of the appeal.

Here we have an order which could have been the

subject of appellate review had the trial court as "dispatcher" determined it ripe for appellate review. The difference between this order and the one in *Smiley* may be a fine one, but a difference we believe there is. It is more closely akin to those mentioned in our prior decisions where we have held the jurisdiction of the lower court ousted by the appeal. It is consistent with sound judicial administration to hold the Superior Court of Baltimore City was ousted by the order of appeal from jurisdiction to pass any order which would affect the status of that appeal. Accordingly, the appeal must be dismissed.

*Appeal dismissed, costs to abide the final result.*