### UNITED STATES v. TAYLOR.

Civ. No. 3131.

United States District Court
W. D. Louisiana. Monroe Division.

Oct. 30, 1951.

Arnold Teks, Chief Litigation Section, OHE, Atlanta, Ga., for plaintiff.

James II. Trousdale, Jr., Monroe, La., for defendant.

DAWKINS, Chief Judge.

This is a suit by the Government for treble damages, consisting of alleged overcharges of rent from the occupants of a housing accommodation in a rent controlled area, under Sections 205 and 206 of the Housing Act of 1947, 50 U.S.C.A. §§ 1881–1902, in the city of Monroe, Louisiana, and for an injunction to restrain future alleged violations of the said law. The total amount claimed was $108, being the amount of the alleged overcharge of $6 per month, from December 1, 1949, to June 1, 1950, amounting to $36, which, when trebled, amounts to the sum claimed.

The complaint was filed on November 15, 1950, and on December 4 following, defendant answered admitting ownership of the premises and that they were subject to rent control; and that while she had rented the apartment to Mr. and Mrs. Barnosky, she denied that the rental had been lawfully fixed for the period in question at the sum of $40 per month, as charged in the complaint. After thus answering the allegations of the complaint categorically, defendant answered in substance that her principal business was farming near Riverton, Louisiana, and that the apartment in question had been leased to the Barnoskys in 1945; that they continued to live there until June 15, 1950; that several months prior to their vacating it, because of ill health and on the advice of her physician, respondent had sought possession for her own use, in order that she might be more accessible to her doctor for medical attention. Further, that the said tenants had made no complaint as to the rent charged and collected until defendant sought possession of the property for her own use, and this suit was brought as a result of a conspiracy between them and employees of the Rent Control Office in Monroe, and that the latter had attempted on September 1, 1950, to fix the rent retroactively to include the period sued upon, which action defendant charged was "null and void." In her answer, defendant alleged no details as to the rent collected over the period from 1945 to June 15, 1950, with respect to any change in rates, etc.

Thereafter, on December 11, 1950, complainant filed a motion to strike certain allegations of the answer and at the same time requests for admissions of fact. The latter motion, consisting of some sixteen separate requests which defendant was requested to admit as true, are as follows:

"1. That during the period from December 1, 1947, to June 1, 1950, you were the owner, lessor, sublessor, assignee or other person entitled to receive rent for housing accommodations located at 810 North Second Street, Monroe, Louisiana.

"2. That Joseph F. Barnosky and Margaret Barnosky became tenants in the accommodations some time in 1945 and continued as such tenants until June 1, 1950.

"3. That the accommodations rented to Joseph F. Barnosky and Mrs. Margaret Barnosky were the same accommodations and contained the same number of rooms throughout their tenancy therein.

"4. That until December 1, 1947 Joseph F. Barnosky and Mrs. Margaret Barnosky paid you $40.00 per month as rent for these accommodations.

"5. That from December 1, 1947, they paid you $46.00 per month and continued to pay that amount until June 1, 1950.

"6. That your first rental of this property was at $40.00 per month.

"7. That you received in due course of mail Form D–41, Order Determining Maximum Rent, signed by W. E. Graham, Acting Rent Director for the Monroe-Bastrop Defense Rental Area, dated September 1, 1950, fixing the maximum rent on this unit at $40.00 per month.

"8. That you have not appealed from said order nor have you applied for a stay of such order.

"9. That at the time you increased the rent from $40.00 per month to $46.00 per

month you did not then and have not since entered into a written lease with Joseph F. Barnosky and Mrs. Margaret Barnosky, or either of them.

"10. That in April, 1950 you applied to the Monroe-Bastrop Defense Rental Area for a certificate of eviction upon the ground that you desired to occupy this property yourself.

"11. That after the presentation of much evidence, including two physician's certificates to the effect that you had to move to town and occupy this house for the purpose of medical treatment, you secured such certificate and effected the eviction of the said tenants.

"12. That nevertheless and notwithstanding your statement that you desired to occupy this house yourself for the purpose of being in town to receive medical treatment from your physician, you did not occupy this house permanently.

"13. That notwithstanding your stated ground for the eviction of the tenants Joseph F. Barnosky and Mrs. Margaret Barnosky, you rented the same after their eviction or vacation therefrom to Mrs. Virginia Butler.

"14. That you charged, and are now charging Mrs. Virginia Butler rent in excess of $40.00 per month.

"15. That you have not refunded the difference between $40.00 and $46.00 per month to Joseph F. Barnosky and Mrs. Margaret Barnosky or either of them.

"16. That neither Joseph F. Barnosky nor Mrs. Margaret Barnosky has filed suit against you in any other court growing out of such overcharges, to the best of your knowledge and belief."

In response thereto, defendant replied:

(1) She referred to Paragraph 1 of her answer in which she had admitted the correctness of this request.

(2) The same course was followed as in the case of No. 1.

(3) Defendant admitted No. 3.

(4) As to No. 4, she replied that the information sought was "beyond the complaint and answer filed herein and is ir-relevant and immaterial, and defendant objects thereto."

(5) Statement No. 5 was denied "except as may be hereinafter especially admitted."

(6) The response to No. 6 was the same as to No. 4.

(7) Defendant admitted receiving Form No. D–41 dated September 1, 1950, but denied it "fixed the maximum rent at $40.00 per month." She further averred that the alleged fixing of the maximum rent was null and void.

(8) That this request was also "beyond the pleadings and irrelevant * * *."

(9) The response to No. 9 was the same as to No. 8, but otherwise denied the statement, except as subsequently admitted.

At a pre-trial conference held on September 20, 1951, all objections to answering Nos. 10 to 15, both inclusive, were overruled, and defendant was ordered to answer the same within five days; at the same time, defendant's amended answer, seeking to make the tenants, Mr. and Mrs. Barnosky parties to the suit, was allowed and ordered served, which has been done.

On September 26, defendant filed a supplemental answer to the request for admissions of fact, in substance as follows:

(10) Request No. 10 was admitted.

(11), (12), (13), and (14), denied, "except as hereinafter admitted" and "further answering said questions, subject to defendant's objections," defendant averred she was a widow seventy years old and had been living in Riverton, Louisiana, for many years, had been in ill health for a long time, which became such that in 1950 her doctor advised her to go to Monroe, where she could receive better medical attention and that this was the reason for seeking possession of her apartment from the Barnoskys; that when she filed with the Rent Control Office her petition for possession and before any action thereon had been taken, the local Rent Director served upon her Form D–402, "making complaint she had collected rent in excess of the maximum" from the tenants prior to their vacating the premises on June 15, 1950; that defendant's counsel promptly

visited the Rent Control Office and discussed the matter with one Graham, who "agreed the complaint of overcharges made by the Barnoskys was a direct result of respondent's having requested possession of her property and was inspired by a feeling and spirit of spite"; and that Graham "either stated directly or gave respondent's attorney the impression that if respondent abandoned her attempt to obtain possession of the premises, the complaint of an alleged overcharge would be dropped." This respondent declined and obtained possession of her apartment on or about June 15, 1950.

Defendant alleged, further, that, after obtaining possession in good faith, "with the intention of occupying the property herself," the manager or overseer on her farm was accidentally drowned about June 1, 1950, and it became necessary for her to finish and harvest her crop. For this reason, the apartment was occupied for a short while by her niece, and several months later, because of the necessity of respondent remaining on the farm and the improvement of her health, she rented the apartment to one Virginia Butler at $46 per month, the same as had been charged the Barnoskys; and that this second renting was done for the reason that "William J. Gilespie, Area Rent Director, had stated categorically that such a rental could and should be fixed for said apartment." Finally, respondent alleged that a maximum rental of $46 per month retroactively to December 31, 1947, was not fixed for the reason set forth in respondent's supplemental and amended answer "which is made a part and portion hereof by reference."

This recital of the pleadings and various steps taken in the case was for the purpose of properly setting forth the background against which the objection of counsel for the Government was made to the manner in which defendant answered or responded originally to the request for admissions of fact, and particularly to its verification by her attorney, instead of by defendant personally. The second answer or response to the request for admissions, filed September 26 in accordance with the court's order of September 20, 1951, as to Nos. 10 to 15, both inclusive, was sworn to by defendant in person.

■ As the court interprets Rule 36 of the Federal Rules of Civil Procedure, 28 U.S.C.A., here invoked, counsel for defendant had the right to question the propriety of the requests, and until passed upon by the court, was not required to answer; so that, at least as to Nos. 10 to 15, any issue of verification has passed out.

As to the sufficiency of the verification of responses to original requests Nos. 1 to 9, inclusive, Rule 36 does not specifically provide who shall make the affidavit. It simply says that " * * * a party may serve upon any other party a written request for the admission * * *" and that "Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request * * *, the party to whom the request is directed serves upon the party requesting the admission either (1) *a sworn statement* denying specifically the matters of which an admission is requested" or gives "reasons why he cannot truthfully admit or deny those matters" or (2) "written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request *is otherwise improper in whole or in part*".

■ The original responses to the requests for admissions were sworn to by the attorney for the defendant on information and belief, as provided for other verifications by counsel. Most of the important questions of fact are now admitted or denied in the answer to the complaint and the original and amended answers to the request for admissions, and, as in the case of any other pleading filed by an attorney, those answers and admissions are binding upon the client.

The sole authority cited by either side was by counsel for the defendant, to wit, Van Horne v. Hines, D.C., 31 F.Supp. 346, 348, from which the following quotation is taken:

"The rule does not indicate that a sworn statement when served shall be signed by the adverse party. It is considered sufficient for the purpose and spirit of the rule

if such sworn statement be made by one who knows or upon information believes the truth of matters stated therein. In the case of denial it may be necessary in a particular case for the trial court to determine whether the sworn statement puts in issue the facts therein denied. It does no more than limit the scope of proof to controverted matters of fact.

\* \* \* \* \* \*

"The rule does not require personal knowledge on the part of the affiant. If the means for information are within his power and he avails himself of same the requirement of the rule is met. The purpose of the rule is to expedite trial and to relieve parties of the cost and labor of proving facts which will not be disputed on the trial and the truth of which can be ascertained by reasonable inquiry. The sworn statement as made and signed was in harmony with the rule."

It is the view of this court that no substantial reason has been shown for the striking of the answers to the requests which were verified by counsel.

All other motions have heretofore been referred to the merits.