MURNAN *v.* JOSEPH J. HOCK, INC.

[No. 158, September Term, 1974.]

*Decided April 15, 1975.*

The cause was submitted on briefs to MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

Submitted by *Joel Marc Abramson, Steven J. Fox* and *Talkin & Abramson* for appellant.

Submitted by *Robert Allen Sapero* and *Sapero & Sapero* for appellee.

LEVINE, J., delivered the opinion of the Court.

This appeal is from a judgment in the sum of $4,273.46 against appellant, George Murnan (the owner), in favor of appellee, Joseph J. Hock, Inc. (the contractor), rendered at the conclusion of a non-jury trial in the Circuit Court for Howard County (Mayfield, J.). The contractor had sued the owner under an oral contract whereby he claimed to have furnished and installed a quantity of sand on the owner's private half-mile racetrack.

The major issue at the trial was whether the contractor had limited the sand to a depth of only two inches as requested by the owner. The trial court found that the contractor had performed in accordance with the request, and thus awarded it a judgment for the amount allegedly due. At the same time, the court entered a judgment for costs against the owner on his counterclaim against the contractor. He had alleged that the amount of sand deposited on the track was too excessive — approximately five inches in depth. Hence, according to undisputed

testimony, it was necessary to remove the sand and the two-inch layer of topsoil which the owner had previously applied in preparation for the sand. It was also necessary, according to one witness, to install an entirely new supply of topsoil and sand — to a depth of two inches each — at a cost of $13,000 for the entire undertaking. This was the only solution, under the undisputed expert testimony, because the overabundance of sand had become blended with the topsoil.

It was also established by uncontradicted expert testimony that as a direct consequence of the excessive application of sand, the racehorses training at the track could only gallop. More importantly, this meant that they could not "breeze," apparently the vernacular for racing at "full speed." Also, because of the surplus sand, the horses were more vulnerable to injury.

At the trial, the contractor readily conceded that the owner had ordered the sand to be installed at a depth of only two inches for the entire width of the complete track. When the contractor undertook to prove that it had done so, however, counsel for the owner proffered in evidence the "Requests for Admissions of Facts" which he had filed in the case on September 18, 1973, almost eight months before the trial, and to which no response had been filed. The gravamen of the requested admissions was that the owner had ordered two inches of sand, but instead the contractor had installed the sand "to a level averaging in excess of 5 inches in depth."

At the bottom of the requested admissions is a certificate of service stating that on the day of filing, a copy of the request was mailed to the attorney for the contractor. The latter resisted the proffer by asserting that he had never received the request, but claimed, alternatively, that the admissions were at best merely evidence on behalf of the owner, and therefore were not binding upon the contractor. The owner maintained that the contractor was conclusively bound by the admissions because it had failed, within the time required by the rules, to deny them or otherwise seek the appropriate relief afforded by Maryland Rule 421.

We cannot, with certainty, determine from the ruling of the court whether it accepted the statement of counsel that the requested admissions had never been received, or the contention that, even had they been received, they would not have been binding on the contractor; or whether it was allowing appellee to withdraw what were regarded as otherwise binding admissions. In any event, the court did not treat them as binding admissions and proceeded to find as a fact that the contractor had applied the sand at a depth of only two inches. It arrived at this decision inferentially by accepting the arithmetical calculations presented by the contractor relating to the dimensions of the track and the quantity of sand allegedly installed.

(1)

Rule 306 c 1 provides that service of a pleading may be made upon a party by mailing a copy of such pleading to the office of its attorney. Subsection d expressly provides that the "certificate of the person who shall have made such service, showing the date thereof and the manner of making the same . . . , shall be *prima facie* proof of such service."

As we have indicated, when the requested admissions were proffered during the trial, counsel for the contractor simply asserted that he had not received them. The court appears to have accepted this explanation, stating merely: "I understand Mr. Sapero has not received a copy of the request for admission of facts."

To the extent, therefore, that the court accepted the bald assertion of counsel as the sole basis for a possible determination that the requests had not been received, it was in error. Here, there was a certificate of service signed by counsel in which he certified that on September 18, 1973, the same day on which the original was filed with the clerk of the court, he had mailed a copy to his opposing number at the same office address which appeared on his pleadings. As we noted earlier, almost eight months then transpired before the trial commenced, during which counsel apparently never glanced at the court file or docket. Under these circumstances, something more than a mere denial of

receipt was necessary to rebut the presumption of service which arises from Rule 306 d. *Cf. McGinnis v. Rogers,* 262 Md. 710, 734-35, 279 A. 2d 459 (1971).

(2)

Prior to 1970, Rule 36 of the Federal Rules of Civil Procedure, on which Maryland Rule 421 is generally patterned, was completely silent on whether admissions under that rule were conclusively binding on the party deemed to have made them. Nevertheless, the majority of federal decisions, to which we have frequently looked for guidance when interpreting our own rules of procedure, *Bauman v. Woodfield,* 244 Md. 207, 220, 223 A. 2d 364 (1966); *Snowhite v. State, Use of Tennant,* 243 Md. 291, 308-09, 221 A. 2d 342 (1966); *Hallman v. Gross,* 190 Md. 563, 573-74, 59 A. 2d 304 (1948); *Eastern States Corp. v. Eisler,* 181 Md. 526, 530-31, 30 A. 2d 867 (1943), tended to regard admissions under Rule 36 as being of binding effect. *Mangan v. Broderick and Bascom Rope Company,* 351 F. 2d 24, 28 (7th Cir. 1965), *cert. denied,* 383 U. S. 926 (1966); *McSparran v. Hanigan,* 225 F. Supp. 628, 636-37 (E.D. Pa. 1963); *United States v. Taylor,* 100 F. Supp. 1016, 1019 (W.D. La. 1951); *Dulansky v. Iowa-Illinois Gas & Electric Co.,* 92 F. Supp. 118, 123 (S.D. Iowa 1950).

There were, however, decisions to the contrary. *Ark-Tenn Distributing Corp. v. Breidt,* 209 F. 2d 359, 360 (3rd Cir. 1954); *United States v. Lemons,* 125 F. Supp. 686, 688-90 (W.D. Ark. 1954). The holding of the latter cases, that admissions under the rule merely "stand in the same relation to the case that sworn testimony bears," *Ark-Tenn Distributing Corp. v. Breidt, supra,* at 360, was bottomed on the concept that "technical considerations will not be allowed to prevail to the detriment of substantial justice . . . ." *Id.* These cases, however, were the subject of vigorous criticism. *See, e.g.,* Finman, *The Request For Admissions In Federal Civil Procedure,* 71 Yale L. J. 371, 418-26 (1962).

All doubts were eliminated at the federal level, however,

on July 1, 1970, when subsection (b) of Federal Rule 36 was amended to include the following:

> "Any matter admitted under this rule is *conclusively established* unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pre-trial order, *the court may permit withdrawal* or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. . . ." (emphasis added).

In Maryland, Rule 421 has historically differed from Federal Rule 36 in one salient respect. Unlike the latter, in its pre-1970 form, subsection f [1] of Rule 421 provides: "The court may, to prevent injustice, allow the party making any such admission to withdraw it or relieve a party from any implied admission, upon such terms as may be just." Thus, while the Maryland rule, like the prior federal rule, does not explicitly state that admissions are to be conclusively binding, it has more nearly done so than previously did its federal counterpart.

We think it clear that whatever might have been the import of Rule 421 absent a provision like subsection f — as was the federal posture prior to 1970 — that provision removes all doubt of the intention to treat admissions as conclusively binding, subject to such relief as might be granted by the court. Simply put, a provision for relief would hardly seem necessary if admissions were to be of non-binding effect in the first instance.

More to the point, however, is the recognized purpose of the rule. As the court said in *McSparran v. Hanigan, supra,* referring to the pre-1970 federal rule:

---

1. Designated as subsection e prior to July 1, 1973.

". . . Rule 36 serves a salutary purpose as one of the means for reducing the area of dispute at the trial. Requests for admission of relevant facts under Rule 36 would be even less useful than interrogatories to parties under Rule 33 if they were not conclusively binding on the party making the admission. For interrogatories under Rule 33 may go beyond *relevant* facts and may deal with matters which are calculated to lead to the discovery of relevant facts. (emphasis in original).

"An answer to a request under Rule 36 is unlike a statement of fact by a witness made in the course of oral evidence at a trial, or in oral pre-trial depositions, or even in written answers to interrogatories. It is on the contrary a studied response, made under sanctions against easy denials, to a request to assert the truth or falsity of a relevant fact pointed out by the request for admission. The purpose of the Rule is not the discovery of information but the elimination at trial of the need to prove factual matters which the adversary cannot fairly contest. . . ." 225 F. Supp. at 636-37.

In short, if Rule 421 is to fulfill its unquestioned function, to eliminate the need to prove factual matters at trial which the adversary cannot fairly contest, the admission produced by the rule must be conclusively binding. A contrary interpretation would reduce the rule to a "useless appendage." Finman, *The Request For Admissions In Federal Civil Procedure, supra,* at 421.

Accordingly, we shall remand the case for a new trial, at which the trial judge shall in due course determine, in accordance with what we said earlier, whether the presumption of service arising under Rule 306 d has been overcome. If he concludes that this burden has not been sustained, that is, if the requested admissions are treated as having been timely received, the court shall then determine whether withdrawal of the admissions is to be allowed in

accordance with Rule 421 f. Should this relief be denied, the admissions would then, of course, be conclusively binding upon appellee. We are not to be understood, however, as expressing any view on what the ultimate resolution of these questions should be.

*Judgment reversed; remanded for a new trial; appellee to pay costs.*