979 A.2d 287

**Barrington D. HENRY**

v.

**GATEWAY, INC., et al.**

**No. 0537 Sept.Term, 2008.**

Court of Special Appeals of Maryland.

Aug. 31, 2009.

---

648

Barrington D. Henry, Pro Se.

Mary Albrecht Jordan & David Daneman (Bishop, Daneman & Simpson, LLC, on the brief), Baltimore, MD, for Appellee.

Panel: MEREDITH, ZARNOCH, and WILLIAM W. WENNER (Retired, Specially Assigned), JJ.

ZARNOCH, Judge.

The central issue in this case is whether, in the absence of a controlling decision by the U.S. Supreme Court and in the face of divided federal precedent, a Maryland court is bound to apply a contractual choice-of-law clause that has the effect of interpreting federal law in a manner inconsistent with a decision of the Court of Appeals of Maryland. We conclude that it would be contrary to the fundamental policy of this State, as embodied in Article 2 of the Maryland Declaration of Rights[1] and in *Pope v. State*, 284 Md. 309, 396 A.2d 1054

---

1.  Article 2 provides:
    The Constitution of the United States, and the Laws made, or which shall be made, in pursuance thereof, and all Treaties made, or which

(1979), for a Maryland court to apply a choice-of-law provision that conflicts with an interpretation of federal law by the State's highest court. For this reason and others set forth below, we must reverse the decision of the Circuit Court for St. Mary's County in this case and remand for further proceedings.

This question arises in litigation of humble origin. Dissatisfied with the Gateway computer he purchased at Best Buy, appellant Barrington D. Henry, *pro se,* filed suit in December 2007 in the circuit court. Naming appellees Gateway, Inc. and Best Buy Co., Inc. as defendants, Henry's four-count *pro se* complaint asserted three state law claims: 1) breach of express warranty; 2) breach of implied warranty; 3) violation of the Maryland Consumer Protection law, Md.Code (1975, 2005 Repl. Vol.), Commercial Law Article, §§ 13–101 *et seq.,* and one federal claim, a violation on the Magnuson–Moss Warranty Act (MMWA), 15 U.S.C. § 2301 *et seq.* Each count sought a judgment of $377.98, which was the computer's purchase price, and $30,000 in consequential damages.

Appellees filed a Motion to Dismiss with Prejudice and to Compel Arbitration, accompanied by exhibits and two affidavits. Among other things, they contended that the One Year Limited Warranty Agreement they said Henry received when he purchased the computer was governed by South Dakota law and required him to arbitrate his dispute. This included his federal MMWA claim, which, they said, was subject to arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*

Henry opposed the motion and in a response, accompanied by documentary materials and his own affidavit, argued that the MMWA prevailed over the FAA and that he was not

shall be made, under the authority of the United States, are, and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby; anything in the constitution or Law of this State to the contrary notwithstanding.

It mirrors the Supremacy Clause of the U.S. Constitution, Article VI, cl. 2.

compelled to arbitrate his federal claim. He also contended that the arbitration provision in the Limited Warranty was a contract of adhesion, fraudulently induced, unconscionable, and the product of misrepresentation, and that the warranty accompanying the computer he purchased did not contain an arbitration provision. In his opposition, appellant also contended that it would be premature to grant appellee's motion before he obtained discovery.[2] In a supplementary opposition filed on the eve of the motions hearing, Henry asked the court to order discovery.[3]

In their April 2008 response to appellant's opposition, appellees mentioned, for the first time, the Court of Appeals decision in *Koons Ford of Baltimore, Inc. v. Lobach*, 398 Md. 38, 919 A.2d 722 (2007), which held that the MMWA supersedes the FAA, so that a litigant advancing a federal warranty claim could not be forced to resolve his or her claim through binding arbitration. However, appellees asserted that the *Koons Ford* case was distinguishable and not controlling.

On April 18, 2008, the circuit court held a hearing on the motion, and appellant appeared to argue his own case and to respond to questions from the court. He did not mention the discovery issue. After argument, the circuit court judge indi-

---

**2.** After challenging the imposition of arbitration fees, appellant said that he "will request [d]iscovery from defendant[s] on their unilateral imposition of arbitration." Later, in this filing, he requested the court "to receive evidence as to the unconsionability of the arbitration provision and the misrepresentation of the [two different] one year warranty agreements."

**3.** On page 9, this filing included a "MOTION FOR DISCOVERY" that stated:

Plaintiff has [a] request for discovery in his opposition to defendant[s'] motion to dismiss and to compel arbitration. Plaintiff ask[s] that this court order discovery, if the evidence provided by the plaintiff does not suffice As to the date that this computer was manufacture[d] in 2004[,] [e]ven though facial [sic] it seems ... to be the product of E Machine mass production between January 2004 and July of 2004 prior to Gateway acquisition of E Machine products and was sold to the plaintiff two [2] years later. And [Plaintiff] seek[s] discovery [of] each and [every] document ... as it relates to the production, distribution and sale of [the] computer at issue.

cated that she was "going to grant the motion to dismiss in light of the arbitration clause." With apparent reference to Henry's claims of fraud, unconscionability, and other challenges to the arbitration agreement, the circuit court judge said: "I don't find your allegations credible in light of the [Gateway] affidavits and the course of conduct that is . . . the way of doing business that Gateway has." A week later, the court granted the appellees' motion to compel arbitration and dismissed Henry's claims with prejudice. This appeal followed.

## QUESTIONS PRESENTED

In our view, the 11 questions appellant has raised in this appeal[4] can be reduced to two issues:

---

**4.** Appellant lists the following issues in his brief:

1. The circuit court erred considering that there exist [sic] an original E machine one year limited agreement that did not contained [sic] an arbitration provision and did not contained [sic] a dispute resolution, delivered at the time of purchase, in the sealed 2004 model original E machine brand computer, packaged and manufactured in 2004, but was shipped to and sold to appellant in 2006.

2. The circuit court erred considering that there is a factual dispute over whether appellant had ever received a copy of Gateway [aka] E Machine subsequent purported arbitration limited one year warranty agreement and the arbitration rules.

3. The circuit court erred by not permitting appellant['s] request for motion for Discovery of the disputes [of] material facts of the two different one year warranty agreement[s], considering that the appellant is entitled to discovery.

4. Is the Gateway [aka] E Machine subsequent purported arbitration agreement enforceable considering that appellant did not have a true notice or knowledge that he had entered a subsequent purported arbitration agreement that includes a binding provision?

5. Is the Gateway [aka] E Machine subsequent purported arbitration agreement enforceable considering the subsequent purported arbitration agreement is procedurally unconscionable and substantively unconscionable?

6. Is the Gateway [aka] E machine subsequent purported arbitration agreement enforceable considering that Gateway [aka] E Machine suppress [sic] material facts of the subsequent purported agreement excessive fees, renders the subsequent purported arbitration agreement substantively unconscionable?

7. The Circuit Court erred considering the C.F.R. 16 Section 700.8 prohibits and stated that . . . A warrantor shall not indicate in any

1) Did the circuit court erred in rejecting appellant's state law defenses to the motion to compel arbitration without affording him a reasonable opportunity to engage in discovery? and

2) Did the circuit court erred in finding that appellant's federal MMWA claim was required to be submitted to arbitration?

We answer "yes" to both questions.

## FACTS[5]

In August of 2006, Henry purchased a Gateway computer from Best Buy. Gateway assembles and sells computers under both the Gateway and eMachines names through "resellers" like Best Buy. These computers are sold subject to the terms of a Gateway One Year Limited Warranty Agreement (the "Agreement"), with the computers essentially nonfunctional without accepting the terms of the Agreement. A copy of this Agreement is placed in a conspicuous location inside of the

---

written warranty or service contract either directly or indirectly that the decision of the warrantor, service contractor, or any designated third party is final or binding in any dispute concerning the warranty or service contract.... Such [a] statement [is] deceptive since 110(d) of the Act gives state and federal courts jurisdiction over suits for breach of warranty and service contract.
8. The Circuit Court erred considering that the arbitration provision is used to effect the fraudulent scheme and itself is an element of the fraud, considering that Appelle[e] promise is a[sic] illusory and present intention not to perform a promise made, under the written warranty covered by the Magnuson–Moss Warranty Act.
9. Whether the drafting of the Magnuson–Moss Warranty Act was the intent of Congress to prohibit binding arbitration.
10. Whether in evaluating the FTC's implementing regulations, the courts should apply the "unreasonable interpretation" "or arbitrary or capricious."
11. Whether the FTC regulations that prohibit binding arbitration of MMWA claims are unreasonable or "arbitrary" and "capricious"

5. Some recitation of *alleged* facts, particularly as to the terms of the arbitration agreement, is necessary to properly address the legal issues in this case. These are distilled from the various exhibits and affidavits submitted by the parties in the circuit court.

computer's sealed box, so that the customer sees the Agreement when unpacking the box.[6]

The Agreement between appellant and Gateway contained the following provision:

**THIS AGREEMENT APPLIES TO YOU UNLESS YOU NOTIFY GATEWAY IN WRITING THAT YOU DO NOT AGREE TO THIS AGREEMENT WITHIN 15 DAYS AFTER YOU RECEIVE THIS AGREEMENT AND YOU RETURN YOUR PRODUCT OR CANCEL SERVICES UNDER EITHER GATEWAY'S OR THE RESELLER'S RETURN POLICY, AS APPLICABLE. THIS AGREEMENT CONTAINS A DISPUTE RESOLUTION CLAUSE. PLEASE SEE SECTION 7 BELOW.**

(Emphasis in original).

The Agreement also contained the following "**DISPUTE RESOLUTION CLAUSE:**"

7. DISPUTE RESOLUTION. You and Gateway agree that any Dispute between You and Gateway will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) . . . The arbitration shall be held at any reasonable location near your residence by . . . whichever method of presentation you choose. If you prevail in the arbitration of any Dispute with Gateway, Gateway will reimburse you for the fees paid to the NAF in connection with the arbitration. . . . **You understand that, in the absence of this provision, you would have had a right to litigate disputes through a court . . . and that you have expressly and knowingly waived those rights and agreed to resolve any Disputes through binding arbitration.** This arbitration provision shall be governed

---

**6.** In an affidavit, appellant asserted that the sealed computer package he received contained a one year warranty without an arbitration provision.

by the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.*
. . .

(Emphasis in original.).

Also set forth in bold type in the agreement was the following statement:

**THIS AGREEMENT AND ANY SALES THEREUNDER SHALL BE GOVERNED BY THE LAWS OF THE STATE OF SOUTH DAKOTA, WITHOUT REGARD TO CONFLICTS OF LAWS RULES.**

A user purchasing an eMachine computer, who turns on the computer, is confronted with a series of clickable set-up screens that give the user the option of either accepting or rejecting two agreements. One of the required clickable screens contains an End User License Agreement for the Microsoft Windows operating system software and the Gateway One Year Limited Warranty Agreement, both of which must be accepted before the customer can use the computer. If a customer selects the "No, I don't accept" option on the clickable screen, the computer will not operate, and the customer can return the computer for a refund.

On July 26, 2007, appellant contacted Gateway Technical Support for assistance because the computer he purchased was freezing up. The technical support representative spent several hours on the phone with Henry, but was unable to fix the problem. Appellant contacted technical support again on July 29, 2007, but again, after several hours on the phone, the representative was unable to resolve the problem. The representative told appellant that his computer had a defective piece of hardware, and advised appellant to take his computer to Best Buy for additional trouble-shooting and repair. On July 30, 2007, Henry took his computer to Best Buy, where an employee determined that the computer was defective and advised him to contact Gateway. Best Buy also told him that if it completed any repairs, then appellant would have to pay all costs of those repairs and that Best Buy would not replace the product or refund the purchase price.

On August 28, 2007, while at Best Buy, Henry contacted Gateway again. According to appellant, Gateway advised him that the computer was still under warranty. He then requested that Gateway either replace the computer with a comparable product or refund the purchase price. Appellant claimed that Gateway refused to replace the computer or issue him a refund. This lawsuit followed. Additional facts will be discussed below.

## DISCUSSION

### 1. Preliminary Matters

■ Appellees asserted, and the circuit court obviously agreed, that the arbitration requirement was governed by federal law, *viz.* the FAA. Although the Agreement recited that it was governed by the FAA, it did not (as is commonly the case) state that the transaction involved interstate commerce. *See Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 442–43, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); *Koons Ford, supra,* 398 Md. at 41, 919 A.2d 722. Nevertheless, in light of the broad reach of the FAA, which covers arbitration agreements in contracts evidencing a transaction "involving interstate commerce," 9 U.S.C. §§ 1–2; *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003), and the fact that appellee has not challenged the Agreement on this ground, we conclude that the FAA would apply to this transaction, unless otherwise precluded by federal law.

In addition, appellant has not challenged the circuit court decision on the ground that it did not stay his claims under 9 U.S.C. § 3. Although the issue of whether a court should stay rather than dismiss claims subject to arbitration under the FAA has divided federal courts, *see Lloyd v. HOVENSA, LLC,* 369 F.3d 263, 268–69 (3rd Cir.2004), there is authority that a dismissal with prejudice is permissible when all of the issues presented in the lawsuit are arbitrable. *See Choice Hotels Int'l. Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709–10 (4th Cir.2001); *Green v. Ameritech Corp.,* 200 F.3d

967, 973 (6th Cir.2000). That appears to be what the circuit court found here. Because appellant does not raise the issue here, we express no view on the question.

## 2. Invalidity of Arbitration Agreement on State Law Grounds

■■■ The FAA provides that written arbitration agreements "shall be validly irrevocable and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, generally available contract defenses, such as fraud, duress, or unconscionability, may be asserted in court to invalidate an arbitration agreement. *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). A court may also consider "issues relating to the making and performance of the agreement to arbitrate," *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).[7] The burden of demonstrating these defenses is on the party opposing arbitration, and these issues are often fact-intensive. *See, e.g., Green Tree Fin. Corporation–Alabama v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 483–84, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).[8]

---

7. In *Prima Paint*, the Supreme Court drew a line between a defense of fraud in the inducement of the contract, which should be considered by the arbitrator, and fraud in the inducement of the arbitration agreement, which may be heard by a court. 388 U.S. at 395, 87 S.Ct. 1801.

8. In *Rodriguez*, the Supreme Court said that 9 U.S.C. § 2 allows courts to grant relief when the party opposing arbitration presents a "well-supported" claim of a defense such as fraud or overwhelming economic power. 490 U.S. at 483–87, 109 S.Ct. 1917. In *Green Tree*, the Court noted:

   [W]e believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. Randolph did not meet that burden. How detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss; for in this case *neither*

■ Here, there was no evidentiary hearing on Henry's defenses and no discovery—merely a motion to dismiss and an opposition, both accompanied by affidavits and exhibits. Because the circuit court obviously considered some of those evidentiary materials, *see* pp. 651–53, 979 A.2d 289–90, Maryland Rule 2–322(c) was triggered. This rule provides:

> If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.

The requirements of Maryland Rule 3–222(c) were the subject of a recent decision of the Court of Appeals, *120 W. Fayette St., LLLP v. Mayor of Baltimore*, 407 Md. 253, 964 A.2d 662 (2009). There, the Court emphasized that when a court considers matters outside of the pleadings, and thus converts a motion to dismiss into a motion for summary judgment, the court must give the plaintiff a reasonable opportunity to present "additional" pertinent material, *id.* at 263, 964 A.2d 662, and must consider the facts in the light most favorable to the plaintiff, not the moving party. *Id.* at 264, 964 A.2d 662. Relying on federal authorities interpreting the similar requirement of Rule 12(b) of the Federal Rules of Civil Procedure, the Court said the circuit court judge erred as a matter of law when he considered matters outside the pleadings and failed to provide the plaintiff the opportunity to employ discovery in order to counter facts in the defendant's affidavit or to establish a factual basis for his actions against the defendant. *Id.*[9]

---

*during discovery nor when the case was presented on the merits* was there any timely showing at all on the point.
531 U.S. at 92, 121 S.Ct. 513. (Emphasis added).

9. Federal cases interpreting F.R. Civ. Proc. Rule 12(b) also indicate that when confronted with a case such as this one, the court must either disregard the submitted matter or give the parties notice that the

■ This is exactly what happened here. Although not labeled a motion to dismiss "for failure to state a claim," the appellees' motion clearly contemplated dismissal on the legal ground that the claims were subject to arbitration. The court expressly relied on appellees' affidavit and exhibits.[10] Yet appellant had no notice that this would transform the appellees' motion to dismiss into one for summary judgment. He may have submitted his own affidavits and exhibits in response to those initially filed by appellees. However, that does not make the requirements of Md. Rule 2–322(c) inapplicable. *See Batson v. Powell,* 912 F.Supp. 565, 571 (D.D.C.1996)(applying the mandatory conversion requirements of F.R. Civ. Proc. 12(b) when both parties submitted material outside the pleadings.). He did not waive his requests for discovery. Even though he may not have mentioned the issue at the motions hearing, it was preserved in two pretrial filings, including a written motion.[11] Moreover, Rule 2–322(a) imposes a mandatory duty on the circuit court judge, not the parties, to give the litigants a reasonable opportunity to

motion is being converted into one for summary judgment and permit the parties to submit evidence accordingly. *See, e.g., Nason v. Am. Canadian Tour, Ltd.,* 942 F.Supp. 220 (D.Vt.1996).

10. It is apparent from the record, *see* pp. 653–54, 979 A.2d 290–91, *supra,* that the court also made a credibility determination based on the submitted material. *See Bagwell v. Peninsula Regional Med. Ctr.,* 106 Md.App. 470, 488, 665 A.2d 297 (1995)("In resolving a motion for summary judgment, the trial court may not determine the credibility of witnesses ... Rather, the court must resolve all disputes of fact, along with all inferences that can be drawn from the evidence and pleadings in the record against the moving party.").

11. In their brief, appellees state that they never received the motion for discovery that was included in appellant's supplementary opposition to the motion to dismiss and argue that it should not be considered by this Court. However, this filing contained a certificate of service, was accepted by the Clerk of Court, included in the record of this case, and presumably considered by the court. In addition, something more than a mere denial of receipt is necessary to rebut the presumption of service that arises from a certificate of service. *Murnan v. Joseph J. Hock, Inc.,* 274 Md. 528, 531–32, 335 A.2d 104 (1975). Finally, appellant indicated his need for discovery in an earlier filing that apparently was received by appellees.

present all materials, including the right to discovery. We conclude that the dictates of Rule 2–322(c) were not followed.[12] Therefore, the dismissal of appellant's state law claims must be reversed, along with the order mandating such claims to arbitration.[13]

### 3. Arbitrability of the Federal MMWA Claim

■ The parties have devoted most of their attention on this appeal to appellant's federal claim under the MMWA. Appellant argues that the MMWA supersedes the FAA and thus, he cannot be compelled to arbitrate his federal claim. He finds support in the decision of the Court of Appeals of Maryland in *Koons Ford, supra,* as well as decisions of two U.S. District courts. *See* Shannon Karla, *Recent Development: Koons Ford of Baltimore, Inc. v. Lobach,* 23 Ohio St. J. on Disp. Resol. 421 n. 2 (2008) (collecting cases). Appellees point to decisions of two federal circuit courts, three U.S. district courts, and four state appellate courts holding that the FAA prevails over the MMWA. *Id.* In addition, they contend that because Henry's agreement with Gateway contains a choice-of-law clause that makes the law of South Dakota

---

12. Perhaps, appellees could have avoided the technical application of Rule 2–322(c) by not joining a motion to dismiss with a motion to compel arbitration. However, even in the latter case, with an evidentiary dispute such as that presented here, the case should not be disposed of summarily without affording the person opposing arbitration limited discovery to challenge the existence or validity of the arbitration agreement.

13. Our reversal does not prevent appellees from filing a motion for summary judgment raising their challenges to Henry's asserted defenses to the arbitration agreement, or the court from conducting an evidentiary hearing on these issues, after a reasonable opportunity has been afforded to appellant to engage in discovery and to respond to appellees' factual contentions. Of course, appellant's discovery would be limited to (1) whether an arbitration agreement exists, including those generally applicable defenses to the validity of the arbitration agreement, not to the facts underlying his state claims and (2) the facts underlying his federal claim. It may also be desirable for the parties to stipulate that their activities during the discovery and any further proceedings do not waive appellees' right to proceed in arbitration on appellant's state claims. *See Brendsel v. Winchester,* 162 Md.App. 558, 568, 875 A.2d 789 (2005), *aff'd.* 392 Md. 601, 898 A.2d 472 (2006).

controlling, that State would adopt the view taken by a majority of federal courts, rather than Maryland's, and compel appellant to arbitrate his MMWA claim.

At the outset, we assume, without deciding, that when the agreement in question provided that it was to be governed by the "laws" of South Dakota, it intended to include interpretations of federal law by the courts of that state. *See* the Restatement (Second) of Conflict of Laws, § 187(1) and § 4.[14] The parties have not directed us to any South Dakota case on the issue of whether the MMWA does or does not supersede the FAA, nor to any decision of any federal court within the Eighth federal circuit (which includes South Dakota) that speaks to this question. Moreover, our search has turned up no such case. And obviously there is no Supreme Court decision on the issue.

Appellees, however, rely on a 1994 decision of the Supreme Court of South Dakota, *St. Cloud v. Leapley*, 521 N.W.2d 118 (S.D.1994), indicating that it is "bound" by decisions of the federal appellate or district courts interpreting federal statutes. *Id.* at 122–23. In that case, the South Dakota appellate court adhered to a decision of the U.S. District Court for the District of South Dakota on the issue of who was an "Indian" for purposes of federal criminal jurisdiction. *Id.* Appellees contend that on the basis of *St. Cloud*, South Dakota's high court would simply do a headcount of the federal courts

---

**14.** Section 187(1) of the Restatement (Second) states that, with certain exceptions discussed later in this opinion, "[t]he laws of the State chosen by the parties to govern their contractual rights and duties will be applied ..." Section 4 provides that the "law" of the state includes "the state's local law," and Comment b. to § 4 says that "local law" of a state of the United States "includes such rules of federal law as are *binding* upon it." (Emphasis added). *But see* Bryon Bolton, *Note: Important Terms for Inclusion in Confidential Settlement Agreements for Financial Service Companies*, 35 U. Balt. L.Rev. 347, 360 (2006)("Although choices of law and forum generally are considered on a state-by-state basis, if the underlying claims are predicated on federal law, then careful consideration should be given to whether state law will apply under any circumstance."). The issue of when a state is bound by or free to ignore federal decisions interpreting federal law is discussed, *infra*, at pp. 662–64, 979 A.2d 296-97.

considering the MMWA/FAA issue and side with the majority.[15] However, in a later decision, *State v. Greger*, 559 N.W.2d 854, 859, n. 5 (S.D.1997), another case involving jurisdiction over Indians in criminal cases, the South Dakota Supreme Court said: "[W]e do not consider ourselves bound by a decision of the U.S. Court of Appeals for the Eighth Circuit interpreting federal law on the question." The *Greger* Court pointed to the Supreme Court's decision in *ASARCO Inc. v. Kadish*, 490 U.S. 605, 620, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989), for the proposition that state courts can render binding judgments over issues of federal law "that rest on their own interpretations of federal law." 559 N.W.2d at 859, n. 5. *St. Cloud* was relegated to a *"but see"* reference after *ASARCO*.[16] *Id.*

Maryland caselaw reflects the views of the majority of state courts on this question and echoes *Greger*. In *Pope v. State*, 284 Md. 309, 320, 396 A.2d 1054 (1979), the Court of Appeals citing Article 2 of the Maryland Declaration of Rights, said that "unlike decisions of the Supreme Court of the United States, decisions of federal circuit courts of appeals construing

---

**15.** A split decision of the Supreme Court of Illinois in 2004, involving this very issue and Gateway, adopted such an approach. *See Borowiec v. Gateway 2000, Inc.*, 209 Ill.2d 376, 283 Ill.Dec. 669, 808 N.E.2d 957, 970 (2004) ("Because federal circuit court authority on the issue is uniform, we, too, hold that the Magnuson–Moss Warranty Act does not bar arbitration of a consumer's claims under the [FAA].") *But see Bowman v. Am. River Transp. Co.*, 217 Ill.2d 75, 298 Ill.Dec. 56, 838 N.E.2d 949, 958 (2005)("[W]here the Supreme Court has not yet ruled on the question presented . . . we are not bound by . . . any federal or circuit court rulings on this issue.").

**16.** In a comprehensive and informative analysis of state caselaw, a *Seton Hall Circuit Review* article notes that "there has been an obvious trend in the states toward the view that state courts are not in any way bound or controlled by federal court of appeals (or district court) decisions construing federal law." Colin Wrabley, *Applying Federal Court of Appeals' Precedent: Contrasting Approaches to Applying Court of Appeals' Federal Law Holdings and Erie State Law Predictions*, 3 *Seton Hall Cir. Rev.* 1, 18 (2006). Wrabley notes 29 states in this category, including Maryland, and 6 states that consider themselves bound by these federal holdings. *Id.* at 19. He lists 5 in the "divided" category, including South Dakota. *Id.* at 21.

the federal constitution and acts of the Congress pursuant thereto, are not binding upon us." *See also Degren v. State,* 352 Md. 400, 414, n. 8, 722 A.2d 887 (1999); *Lone v. Montgomery County,* 85 Md.App. 477, 494, 584 A.2d 142 (1991).

■ Even if *Greger* and *Pope* did not appear to be consistent in their view of the impact of federal caselaw,[17] there is an overriding reason why the choice-of-law clause in the Gateway Agreement cannot have the effect of precluding a Maryland court from applying the decision of our State's highest court in *Koons Ford.* It would be contrary to a "fundamental policy" of this State within the meaning of § 187(2)(b) of the Restatement (Second) of Conflict of Laws, *viz.,* the requirements of Article 2 of the Maryland Declaration of Rights and of *Pope v. State, supra,* that "the Judges of this State ... shall be bound" by federal law as interpreted by the U.S. Supreme Court or the Maryland Court of Appeals, if there is no Supreme Court decision.[18]

Section 187 of the Restatement (Second) states:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

---

**17.** "A conflict of law inquiry is necessary only if there are two relevant forums with divergent laws." *Accu–Tech Corp. v. Jackson,* 352 F.Supp.2d 831, 835, n. 5 (E.D.Mich.2005).

**18.** Although appellant has not specifically relied on § 187(2)(b), we believe we must address its application in order to resolve the conflict between appellant's insistence on an interpretation of federal law as embodied in *Koons Ford* and appellees' contention that foreign law applies in this case.

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or

(b) the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.[19]

Embracing the rule set forth in the Restatement (Second), Maryland appellate courts have long recognized the ability of parties to specify in their contracts which state's law will apply. *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 617, 921 A.2d 799 (2007). The Court of Appeals has required the existence of a "strong" public policy to override a choice-of-law clause in a contract, *id.* at 621, 921 A.2d 799, and has not hesitated to apply out-of-state law, even where it would

---

**19.** Section 187(2)(b) incorporates § 188, which provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

   (a) the place of contracting,

   (b) the place of negotiation of the contract,

   (c) the place of performance,

   (d) the location of the subject matter of the contract, and

   (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in § § 189–199 and 203.

Maryland's highest Court has yet to adopt § 188 of the Restatement. *See Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 619 n. 3, 921 A.2d 799 (2007); and *American Motorists Ins. Co. v. ARTRA Group*, 338 Md. 560, 570–73, 659 A.2d 1295 (1995).

trump an act of the General Assembly. *Id.* at 627, 921 A.2d 799.

■ However, it is difficult to think of a stronger or more fundamental public policy than one expressed in the State Constitution. Nor can we conceive of a more forceful statement of the duty of a state court than found in Article 2 of the Declaration of Rights. Unlike the oath for State office contained in Article I, § 9 of the Maryland Constitution, which requires a judge to "support" the laws of the State, Article 2 expressly mandates that "judges of this State" are "bound" by federal law, notwithstanding "anything in the Constitution of Laws of this State to the contrary." [20] Moreover, in the absence of a controlling decision of the U.S. Supreme Court, Maryland courts are to "decide federal questions the way they believe the Supreme Court would decide them," Donald Ziegler, *Gazing at the Crystal Ball: Reflections on the Standards State Judges Should Use to Ascertain Federal Law,* 40 Wm & Mary L.Rev. 1143, 1177 (1999), not the way *some* federal courts have. *Pope, supra,* 284 Md. at 320, 396 A.2d 1054. That is particularly true of a federal question like that presented in *Koons Ford,* which had divided courts around the country. To adopt appellees' position that a decision of Maryland's highest court on a federal question dissolves because of another state's opposing interpretation of federal law, or because of a headcount of federal appellate or district court decisions on the subject, would require Maryland courts to decide a federal question contrary to the way they believe the Supreme Court would have decided it. This would fly in the face of Article 2 of the Declaration of Rights. Thus, we conclude that embracing a decision of another state or a federal court disagreeing with *Koons Ford,* would, in the words of § 187(2)(b) of the Restatement (Second), "be contrary to a fundamental policy of [this] State."

---

**20.** The word "Laws" in Article 2 would appear to include Maryland caselaw. *See Murphy v. Yates,* 276 Md. 475, 494, 348 A.2d 837 (1975)(The word "law" in a Maryland constitutional provision governing state's attorneys was construed to include the common law.).

There is little doubt that the other prerequisite of § 187(2)(b) is satisfied in this case. Maryland has a materially greater interest in the determination of the MMWA/FAA issue than South Dakota. That state has never decided the issue and its caselaw indicates no clear preference for following federal law in this area. However, because a Maryland court is bound by Article 2 of the Maryland Declaration of Rights to decide the federal law issue the way it believes the U.S. Supreme Court would have decided it, it has a materially greater interest than South Dakota in applying the *Koons Ford* decision.

■ In addition, even if we were required to consider the factors specified in § 188(2) of the Restatement to determine whether § 187(2)(b) has been satisfied, *see* n. 18, *supra,* they would favor the application of Maryland law (*i.e.* its interpretation of federal law) here. The place of contracting would be Maryland, since appellant purchased the computer in this State and, according to appellees, accepted the contract terms in Maryland by electronically agreeing to it in the Gateway End User License Agreement. The place of negotiation of the contract, to the extent there was any, was Maryland. The place of performance, in terms of payment of the purchase price and receipt of the computer, was Maryland. The location of the subject matter of the contract, the computer, is in Maryland. And lastly, appellant's domicile is Maryland, as well as his residence. From the record, it appears that Gateway has a technical support center in South Dakota, although neither appellee is incorporated or headquartered there. In addition, Gateway's reseller, Best Buy, has a retail outlet in Maryland and both entities do business here.

For all of these reasons, § 187(2)(b) would dictate that Maryland law applies here and that the *Koons Ford* case controls the issue of whether appellant's MMWA claim survives arbitration.[21] Because appellant's federal claim cannot

---

**21.** Appellees also contend that the Court of Appeals of Maryland would have decided the *Koons Ford* case differently if it had considered the

be forced to arbitration under the FAA, this case must be reversed and remanded for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR ST. MARY'S COUNTY REVERSED AND CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**

impact of 15 U.S.C. § 2311(b)(1) in the MMWA, which provides: "Nothing in this chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law." They argue that this language expressly preserves a consumer's right under the FAA and state arbitration acts. Aside from the anomaly of businesses invoking the rights of consumers to deny them a judicial remedy in favor of arbitration, we believe § 2311(b)(1) would not have changed the outcome in *Koons Ford*. Appellees' interpretation of § 2311(b)(1) would run contrary to the "proconsumer" policy of the MMWA and its guarantee that a warranty dispute would be adjudicated in a judicial forum. *Koons Ford, supra*, 398 Md. at 58, 919 A.2d 722.